J-A08042-15

2015 PA Super 139

| N.T., AND ON BEHALF OF MINOR CHILDREN K.R.T. AND J.A.T., | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellee | : | |
| v. | : | |
| F.F., | : | |
| Appellant | : | No. 1121 MDA 2014 |

Appeal from the Order Entered June 6, 2014,
in the Court of Common Pleas of Centre County,
Civil Division, at No(s): 14-0607

BEFORE:    SHOGAN, WECHT, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:              **FILED JUNE 15, 2015**

F.F. appeals from the order entered June 6, 2014, which overruled his

preliminary objections to a petition for protection from abuse (PFA petition)

filed by N.T.[1,2]  F.F. based his preliminary objections on improper service and

lack of personal jurisdiction.  Upon review, we reverse the trial court's order

---

[1] N.T. also filed the PFA petition on behalf of her minor children, K.R.T. and J.A.T., neither of whom is F.F.'s child.

[2] On August 1, 2014, this Court issued an order directing F.F. to show cause as to why the appeal should not be quashed as interlocutory.  In response, F.F. obtained an order from the trial court, dated August 8, 2014, amending the June 6, 2014 order to state that a substantial issue of jurisdiction had been presented to the court, making the order appealable pursuant to Pa.R.A.P. 311(b)(2) ("An appeal may be taken as of right from an order in a civil action or proceeding sustaining ... jurisdiction over the person ... if[] … the court states in the order that a substantial issue of ... jurisdiction is presented.").  On August 25, 2014, this Court discharged the August 1, 2014 order and referred the issue to the merits panel.  In light of the trial court's August 8, 2014 order, we conclude the Court has jurisdiction over this appeal.

*Retired Senior Judge assigned to the Superior Court.

overruling F.F.'s preliminary objection based on lack of personal jurisdiction, vacate the temporary PFA order, and dismiss N.T.'s PFA petition.

We have pieced together the background of this case by reviewing the certified record, which includes, *inter alia*, N.T.'s PFA petition, F.F.'s preliminary objections, and the exhibits to those preliminary objections which include several orders and filings from the child custody action in California. F.F. and N.T. are the parents of one minor child, J.C., born in June 2012. Request for Order and Supporting Declaration, 11/30/2012. N.T. and F.F. lived together in California with J.C. and the other two children from February 2011 through October 4, 2012. *Id.* On October 4, 2012, N.T., without notice, removed all three children to Pennsylvania. *Id.* On November 30, 2012, F.F. instituted an action in California seeking to establish his paternity of J.C. and to obtain custody, visitation, and the return of J.C. to California.[3] *Id.* On April 21, 2013, N.T. filed a response requesting genetic testing to determine whether F.F. is the biological father of J.C. Response to Petition to Establish Paternal Relationship, 4/21/2013. N.T. also requested mediation. Responsive Declaration to Request for Order, 4/21/2013. On May 22, 2013, the California court held a hearing and entered an order setting forth, *inter alia*, a shared custody arrangement for J.C. Court Order Re: Custody and Visitation After Hearing, 5/22/2013.

---

[3] Although it is not clear from the record when, N.T. and the children returned to California at some point prior to May 2013.

Because N.T. was not complying with the May 22, 2013 order, on June 17, 2013, F.F. applied in California for an emergency transfer of physical and legal custody of J.C. to him pending further order of court. F.F. alleged that he was to have visitation with J.C. on June 15-16, 2013, but instead, N.T. told F.F. on the morning of June 15 that she was leaving J.C. with him and going back to Pennsylvania with her other children on June 16.[4] Declaration of F.F., 6/17/2013, at 2. Although F.F. did not agree, N.T. left J.C. with him anyway and did not return for J.C. on June 16. *Id.* On Monday, June 17, 2013, F.F. went to "the self-help center" to obtain court assistance. *Id.* To his surprise, he saw N.T. there filling out forms. *Id.* F.F. told N.T. that he would be seeking an emergency change in custody and order of the court so J.C. could permanently stay with F.F. *Id.* at 2-3. At some point thereafter, N.T. and the other two children went to Pennsylvania.

A hearing on F.F.'s request for change of custody was scheduled for July 2, 2013. Following the hearing, at which N.T. did not appear, an order was issued finding that N.T., without cause, abandoned J.C. to F.F. Findings and Order After Hearing, 7/2/2013. The order awarded sole legal and physical custody of J.C. to F.F. and scheduled the matter for trial on all issues on September 23, 2013. *Id.* On September 23, 2013, the California

---

[4] F.F. also explained that, "on Thursday evening," another incident occurred in which N.T. said she was going to violate the court order and leave for Pennsylvania, but the police were called and they counseled her to stay. Declaration of F.F., 6/17/2013, at 3.

- 3 -

trial court awarded F.F. full legal and physical custody. Notice of Entry of Judgment, 9/23/2013. The California court found N.T. failed to (1) comply with the May 22, 2013 order; (2) appear at the hearing held on July 2, 2013, despite proper notice; and (3) comply with numerous prior orders issued by the court. *Id.*

On February 19, 2014, N.T. filed the instant PFA petition in the Court of Common Pleas of Centre County, Pennsylvania. Therein, she alleged multiple instances of abuse by F.F. throughout the course of their relationship. PFA Petition, 2/19/2014. Notably, N.T. alleged that the most recent instance of abuse occurred on June 15, 2013. *Id.* N.T. alleged that, on that date, F.F. pinned her against her car stating that, if she interfered with his attempt to gain full custody of J.C., he would have her killed. *Id.* According to N.T., she came back to Pennsylvania the next day. *Id.*

F.F. filed preliminary objections to the PFA petition on March 10, 2014, and a hearing on the preliminary objections was held on April 15, 2014. At the hearing, F.F.'s counsel presented argument with regard to F.F.'s lack of minimum contacts with Pennsylvania and submitted into evidence a "Declaration/Affidavit of [F.F.]," wherein F.F. represented, in part, as follows:

> I do not have and never have had any connection whatsoever with Pennsylvania. I have never been to Pennsylvania, neither lived nor visited there. I have no friends or relatives in Pennsylvania. I have never conducted business in Pennsylvania. I have no colleagues in Pennsylvania. My sole

involvement with Pennsylvania was to serve [N.T.] in Pennsylvania with process ordering her to appear for custody proceedings in California after she absconded with our son [in October 2012] to Pennsylvania instead of showing up for our scheduled counseling session.

Declaration/Affidavit of F.F., at ¶4.

In an effort to establish the minimum contacts needed for the court to exercise personal jurisdiction over F.F., N.T. testified at the hearing as to F.F.'s hiring of a private investigator to locate her in Pennsylvania. That testimony, in addition to F.F.'s hearing testimony on the matter, reveals as follows.

F.F. originally hired a private investigator in Stockton, California, in November 2012, because N.T.'s whereabouts were unknown, but F.F. suspected that she was in California at the time. N.T., 4/15/2014, at 21, 27-28, 30. F.F. explained that he hired the private investigator because N.T. was concealing her and J.C.'s whereabouts and F.F. needed to serve her with paperwork for the California child custody action. *Id.* at 27-28. At some point, the private investigator in California informed F.F. that he had found some trace of N.T. in Pennsylvania, and the private investigator transferred the case to another private investigator in Pennsylvania. *Id.* at 28. F.F. also testified that, although he initially thought N.T. was in California, he became aware several weeks later that she was in Pennsylvania, based on bank account statements he viewed which included charges made by N.T. in Mechanicsburg, Pennsylvania. *Id.* at 30-31. The private investigator in

Pennsylvania ultimately located N.T. in March 2013. *Id.* at 28. After N.T. was served with the California child custody paperwork and the May 22, 2013 hearing was held, F.F. did not utilize a private investigator for any purpose. *Id.* at 28-29.

Following the hearing, on June 6, 2014, the trial court overruled F.F.'s preliminary objections. With regard to the issue of personal jurisdiction, the trial court reasoned that, while F.F. had never resided in Pennsylvania, he had "reached out to Pennsylvania by hiring the private investigator." Trial Court Opinion, 6/6/2014, at 4. The trial court further explained that F.F. "entered into a contract specially related to Pennsylvania subject matter" and that contract "induced [the private investigator] to take part in significant activity within the Commonwealth" as F.F.'s agent. *Id.* Thus, the trial court concluded that F.F.'s contacts were such that the exercise of personal jurisdiction was proper. *Id.* This appeal followed.

F.F. presents three issues for our consideration, which we reduce to the following: whether the trial court erred in overruling F.F.'s preliminary objection based on lack of personal jurisdiction.

> Our standard of review in an appeal from an order [disposing of] preliminary objections challenging the exercise of *in personam* jurisdiction is as follows:
>
>> When preliminary objections, if sustained, would result in the dismissal of an action, such objections should be sustained only in cases which are clear and free from doubt.... Moreover, when deciding a motion to dismiss for lack of personal jurisdiction the

court must consider the evidence in the light most favorable to the non-moving party.

[T]his Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or an abuse of discretion. Once the moving party supports its objections to personal jurisdiction, the burden of proving personal jurisdiction is upon the party asserting it. Courts must resolve the question of personal jurisdiction based on the circumstances of each particular case.

*Gaboury v. Gaboury*, 988 A.2d 672, 675 (Pa. Super. 2009) (internal quotation marks and citations omitted).

The provision of the Protection From Abuse Act (PFAA) relating to jurisdiction provides:

**(a)** **General rule.--**The court shall have jurisdiction over all proceedings under this chapter.

**(b)** **Effect of departure and nonresidence.--**The right of the plaintiff to relief under this chapter shall not be affected by either of the following:

(1) The plaintiff's leaving the residence or household to avoid further abuse.

(2) The defendant's absence from this Commonwealth or the defendant's nonresidence in this Commonwealth, **provided that the court has personal jurisdiction over the defendant in accordance with 42 Pa.C.S. § 5322** (relating to bases of personal jurisdiction over persons outside this Commonwealth).

23 Pa.C.S. § 6103 (emphasis added). Thus, the PFAA makes it clear that, in order for a petitioner to obtain relief against a nonresident defendant, a

court must have personal jurisdiction over that defendant in accordance with Section 5322 of the Judicial Code, Pennsylvania's long-arm statute.

> Section 5322(a) contains ten paragraphs that specify particular types of contact with Pennsylvania deemed sufficient to warrant the exercise of specific jurisdiction. In addition, section 5322(b) operates as a "catchall," providing that jurisdiction may be exercised over persons who do not fall within the express provisions of section 5322(a) to the fullest extent permitted by the Due Process Clause of the United States Constitution. Regardless, if a defendant's activities in Pennsylvania only give rise to jurisdiction under section 5322(a) or (b), the plaintiff's cause of action is limited to those activities which formed the basis of jurisdiction. ***See*** 42 Pa.C.S.[] § 5322(c).

***Mendel v. Williams***, 53 A.3d 810, 820-21 (Pa. Super. 2012) (some citations omitted).

We further observe that,

> [o]nce it is determined that jurisdiction is authorized by the Long–Arm Statute, the party seeking relief must demonstrate that the exercise of jurisdiction conforms with the Due Process Clause. Whether specific jurisdiction is proper under the Due Process Clause requires a two-part analysis: first, the plaintiff must demonstrate that the defendant purposefully established minimum contacts with the forum state; and second, the maintenance of the suit must not offend "traditional notions of fair play and substantial justice."

***Id.*** at 821 (citations omitted).

Instantly, the crux of the parties' dispute is whether F.F.'s hiring of a private investigator to locate N.T. is sufficient to confer personal jurisdiction over F.F. We conclude that it is not. Specifically, F.F.'s conduct in this

regard does not establish the minimum contacts needed for a court of this Commonwealth to exercise personal jurisdiction over him.[5]

> A defendant purposefully establishes minimum contacts with the forum state when its contacts are:
>
>> such that the defendant could reasonably anticipate being called to defend itself in the forum.... Random, fortuitous, and attenuated contacts cannot reasonably notify a party that it may be called to defend itself in a foreign forum and, thus, cannot support the exercise of personal jurisdiction. That is, the defendant must have purposefully directed its activities to the forum and conducted itself in a manner indicating that it has availed itself of the forum's privileges and benefits such that it should be subjected to the forum state's laws and regulations.

**Mendel**, 53 A.3d at 821 (quoting **Aventis Pasteur, Inc. v. Alden Surgical Co.**, 848 A.2d 996, 1000 (Pa. Super. 2004)).

---

[5] This Court has observed as follows:

> [E]ach of the ten subsections of § 5322(a) [is] wholly subsumed within the catchall provision of § 5322(b). Consequently, the only appropriate focus ... is whether the minimum requisites of due process have been met, for if they have not, the various subsections of § 5322(a) cannot statutorily authorize an unconstitutional exercise of *in personam* jurisdiction. If they have been met, any analysis of the subsections of § 5322(a) would be superfluous.

**Gaboury**, 988 A.2d at 679 n.5 (quoting **Scoggins v. Scoggins**, 555 A.2d 1314, 1319 (Pa. 1989)). Moreover, "Pennsylvania courts have recognized that [Section 5322(b)] renders the reach of the long-arm statute coextensive with that permitted by the Due Process Clause of the Fourteenth Amendment." **Fid. Leasing, Inc. v. Limestone Cnty. Bd. of Educ.**, 758 A.2d 1207, 1211 n.3 (Pa. Super. 2000).

N.T. argues, in essence, that because F.F. "transacted a business agreement in the Commonwealth of Pennsylvania with the private investigator to perform services regarding" N.T., the minimum contacts requirement of the Due Process Clause is satisfied. N.T.'s Brief at 14-17. We disagree.

"[A] 'relationship among the defendant, the forum, and the litigation' is the essential foundation of *in personam* jurisdiction." ***Helicopteros Nacionales de Colombia, S.A. v. Hall***, 466 U.S. 408, 414, 418 (1984) (providing that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions.").

Here, the only relationship between F.F. and Pennsylvania is by way of a private investigator he hired in California in November 2012 for the purpose of serving N.T. with paperwork related to the ongoing California child custody proceeding. That private investigator thereafter transferred the case to a private investigator in Pennsylvania. Not only is F.F.'s single contact with Pennsylvania tenuous, it also is not clear that it is related to N.T.'s PFA petition filed in Pennsylvania more than eight months after the contact ceased.[6] N.T. has not met her burden to prove that F.F. has availed

_____

[6] During oral argument in the trial court, counsel for N.T. disclaimed the position that the hiring of the private investigator was an act of abuse, but

himself of Pennsylvania's "privileges and benefits such that [he] should be subjected to [its] laws and regulations." *Mendel*, 53 A.3d at 821. Nor has she shown that he could "reasonably anticipate being haled into court in Pennsylvania" in light of the activities at issue here. *See Grimes v. Wetzler*, 749 A.2d 535, 541 (Pa. Super. 2000); *Mendel*, 53 A.3d at 821. Under these circumstances, F.F.'s contacts with the Commonwealth, made either individually or through the private investigator, are too attenuated to form the basis for personal jurisdiction. *See Grimes*, 749 A.2d at 541 (explaining that although nonresident defendants may have traveled to this Commonwealth to investigate a plaintiff's whereabouts, this conduct was insufficient to establish the requisite minimum contacts to confer personal jurisdiction over the nonresident defendants).

Because the trial court lacked personal jurisdiction over F.F., the trial court erred in overruling F.F.'s preliminary objection raising that issue. Accordingly, we reverse the trial court's order overruling F.F.'s preliminary objection based on lack of personal jurisdiction, vacate the trial court's temporary PFA order, and dismiss N.T.'s PFA petition.

---

suggested that N.T. would be able to establish its connection to the alleged abuse. *See* N.T., 4/15/2014, 40-41 ("[T]he main part that I want to address is the question that [c]ounsel just raised saying that when the private investigator was hired we're assuming that was an act of abuse. That's not what I'm saying. I'm saying that he reached into Pennsylvania. That provides the [c]ourt [with] jurisdiction under [42 Pa.C.S § 5322(a)(3)]. It doesn't have to be an act of abuse, although I think we can certainly establish that it's part of an abusive pattern.").

Order reversed.  Temporary PFA order vacated.  PFA petition dismissed.  Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 6/15/2015