J-A21033-18

2019 PA Super 112

| | | |
|---|---|---|
| FREEMAN MAURICE VAUGHAN, JR., ADMINISTRATOR OF THE ESTATE OF JANICE VAUGHAN, DECEASED | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 3101 EDA 2017 |
| OLYMPUS AMERICA, INC., OLYMPUS CORPORATION OF THE AMERICAS, OLYMPUS MEDICAL SYSTEM CORP. AND CUSTOM ULTRASONICS, INC. | : : : : | |

Appeal from the Order Entered August 18, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  2308 September Term 2016

BEFORE:  PANELLA, J., OLSON, J., and McLAUGHLIN, J.

OPINION BY McLAUGHLIN, J.:                          **FILED APRIL 10, 2019**

Decedent Janice Vaughan underwent medical procedures at Carolinas Medical Center in Charlotte, North Carolina, during which physicians used an Olympus TJF-Q180V duodenoscope (scope). The scope is designed for reuse on multiple patients and must be disinfected – or "reprocessed" – after each use. Allegedly, the scope used on Mrs. Vaughan was contaminated, and she developed a multi-drug-resistant infection and in May 2015, passed away.

Her widower, Freeman Maurice Vaughan, Jr., as administrator of her estate, instituted this suit in Philadelphia. Olympus Medical System Corp. (OMSC) filed preliminary objections seeking dismissal for lack of personal jurisdiction, which the trial court sustained. Because OMSC had contacts with Pennsylvania that were sufficiently related to the causes of action on which

Vaughn is suing OMSC, it is subject to Pennsylvania's specific jurisdiction. We therefore reverse the order sustaining the preliminary objection to personal jurisdiction over OMSC.

Other defendants – Olympus America, Inc. (OAI), Olympus Corporation of the Americas (OCA), and Custom Ultrasonics, Inc. (Custom) – sought dismissal based on the doctrine of *forum non conveniens*. *See* 42 Pa.C.S. § 5322(e). In our view, the lower court abused its discretion when it found "weighty reasons" to disturb Vaughan's choice of forum. *See Bochetto v. Dimeling, Schreiber, & Park*, 151 A.3d 1072 (Pa.Super. 2016). Accordingly, we also reverse the order granting the *forum non conveniens* dismissal.

## I. Factual and procedural background

According to the Complaint, OMSC redesigned the scope several years before Decedent's procedures but did not update the reprocessing procedures and instructions, known as the "reprocessing protocol." *See* Complaint, ¶¶ 1, 3, 22, 23.[1] As a result, end users were allegedly unable to sanitize the redesigned scope effectively. *Id.*, ¶ 3. Vaughan claims that OMSC failed to update the reprocessing protocol despite its allegedly receiving notice in 2013 of infections in patients involving scopes in the same product line as the subject scope, as well as in another line of scopes. *Id.*, ¶ 24.

The Complaint names three defendants: OMSC, OAI, and OCA. OMSC allegedly designed and manufactured the subject scope. *Id.*, ¶ 11. OMSC is a

---

[1] *See also* OMSC's Br. at 56 ("OMSC as the manufacturer is responsible for designing the product and creating or revising its reprocessing instructions.").

foreign corporation organized under the laws of Japan, and has its principal place of business in Tokyo. Complaint, ¶ 11. As a foreign manufacturer marketing a medical device in the United States, it must not only register with the Food and Drug Administration (FDA), but also must designate an agent in the United States to meet its statutory reporting requirements. *See* 21 U.S.C.A. § 360(i)(1)(A)(ii); 21 C.F.R. §§ 803.58, 807.40.

OCA and OAI are New York corporations, and each maintains its principal place of business in Center Valley, Pennsylvania. OMSC's Preliminary Objections, ¶ 6.[2] It is undisputed that for FDA purposes, OCA is OMSC's agent. *See* OMSC's Memorandum of Law in Support of Preliminary Objections, at 12; Exhibit I to OMSC's Preliminary Objections, Affidavit of Laura Storms, ¶ 7. In addition, OCA and OAI are allegedly involved in the marketing, distribution, and post-marketing safety surveillance of the scope. Complaint, ¶ 9, 10.

Vaughan alleges that the FDA granted clearance for marketing the scope pursuant to a procedure known as "section 510(k)[3] premarket notification." *See* Complaint, ¶ 17. Under this procedure, certain classes of medical devices may be marketed if "the FDA concludes on the basis of the [section] 510(k) notification that the device is 'substantially equivalent' to a pre-existing

---

[2] ***See also*** OCA's Answer to Complaint With New Matter, ¶ 10; OAI's Answer to Complaint With New Matter, ¶ 9.

[3] "Section 510(k)" "refers to the original section of the [Medical Device Amendments of 1976 to the Federal Food, Drug, and Cosmetic Act] describing this review process." ***Gross v. Stryker Corp.***, 858 F. Supp. 2d 466, 484 (W.D. Pa. 2012).

device . . . ." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 478, 479 (1996). Section 510(k) submissions must include, among other things, proposed labels, labeling, and advertisements sufficient to describe the device, its intended use, and the directions for its use. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 345 (2001) (citing 21 CFR § 807.87(e)). After the FDA granted section 510(k) clearance, OMSC allegedly "remained directly involved with the dissemination of information about the device such as warnings, instructions, and other safety information within the U.S." Complaint, ¶ 17.

The Complaint also alleges certain of the regulatory duties of a medical device manufacturer such as OMSC. *Id.*, ¶ 2 (citing 21 C.F.R. §§ 820.181, 820.30(j)). FDA regulations require a device manufacturer to obtain approval of a device master record, defined as "a compilation of records containing the procedures and specifications for a finished device." 21 C.F.R. §§ 820.30, 820.181. This includes information regarding device maintenance, as well as servicing procedures and methods. 21 C.F.R. § 820.181(e).

OMSC allegedly had a duty to ensure that an effective and validated reprocessing protocol is disseminated to medical facilities and professionals. Complaint, ¶¶ 2, 26. Nonetheless, and despite its redesign of the scope, OMSC allegedly took no action to update the reprocessing protocol, and thus failed to provide end users of the redesigned scope an effective and validated protocol. *Id.*, ¶¶ 23, 27. If OMSC wanted or needed to disseminate information about changes to the reprocessing protocol, it allegedly would do so through OCA. *Id.*, ¶ 16.

Vaughan asserts four causes of action, all four against OMSC, OCA, and OAI. The causes of action center on the claim that the reprocessing protocol was inadequate. Vaughan claims negligence for (among other things) the alleged failure to provide an "effective and validated" reprocessing protocol. *Id.*, ¶¶ 41(a), 51. He also asserts "fraud-intentional misrepresentation" for "misrepresent[ing] that the reprocessing protocol . . . was a safe and adequate means of cleaning and disinfecting" the scope. *Id.*, ¶ 57. He claims "fraud-negligent misrepresentation" for "falsely represent[ing] that the [scope] would be disinfected and safe for subsequent use in a new patient after administration of the reprocessing protocol." *Id.*, ¶ 68. He also asserts loss of consortium.

OCA and OAI answered the Complaint and joined Custom as an additional defendant.[4] Custom is a Pennsylvania company headquartered in Ivyland, Pennsylvania. Using OMSC's reprocessing protocol, Custom designed, manufactured, and tested an automated endoscope reprocessor (AER) to clean and disinfect the scope. Custom does not sell or service the AER, relying instead on third-party contractors.

OMSC filed preliminary objections in December 2016, asserting, *inter alia*, a lack of personal jurisdiction. It included as an exhibit the affidavit of Laura Storms, OCA's Vice President of Regulatory and Clinical Affairs and Quality Assurance. Exhibit I to OMSC's Preliminary Objections, Affidavit of

---

[4] *See* Joinder Complaint, 01/10/2017; *see also* Pa.R.C.P. 2255.

Laura Storms, ¶ 2. She is responsible at OCA for compliance with FDA regulations, including premarket applications and post market complaints. *Id.* Her office is in Center Valley.[5] Her affidavit confirmed that the subject scope was manufactured by OMSC and it constitutes a medical device subject to FDA regulations. *Id.*, ¶ 4. She also admitted that because OMSC is a foreign manufacturer, "it designates OCA as its U.S. agent for all its products sold in the United States." *Id.* That agency relationship extends to OMSC's statutory reporting requirements with the FDA, including "premarket notifications related to approval of the device," *i.e.*, section 510(k) premarket notifications. *Id.*, ¶ 6.

The trial court sustained the preliminary objection regarding personal jurisdiction in February 2016 and granted dismissal as to OMSC. Subsequently, OCA, OAI, and Custom filed a joint motion to dismiss based on *forum non conveniens*. Following additional discovery and supplemental briefing, the trial court dismissed Vaughan's claims without prejudice to re-institute litigation in North Carolina. Vaughan timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a responsive opinion.

Vaughan raises the following issues:

1. Did the court err in ruling that Pennsylvania does not have personal jurisdiction over OMSC when that entity regularly sent

---

[5] *Cf.* OCA's Answer to Complaint With New Matter, ¶ 15 ("OCA admits Ms. Storms is its Vice President of Quality Assurance, and that her office is in Center Valley, Pennsylvania.").

employee liaisons to live in Pennsylvania and to work with its sister corporations, which are located in Pennsylvania, and when all regulatory, sales, marketing, and quality assurance functions necessary to make its medical device available in the U.S. were carried out in, or controlled from, Pennsylvania[?]

2. Did the court abuse its discretion in granting OAI, OCA and Custom's motion to dismiss for *forum non conveniens* when all those entities are headquartered in Pennsylvania, all or nearly all of their facilities are located in Pennsylvania, all or nearly all of their employees are located in Pennsylvania, and all or nearly all of their conduct giving rise to this action took place in Pennsylvania?

Vaughan's Br. at 4.

## II.   Discussion

### A.   Specific Jurisdiction Is Proper in Pennsylvania.

In his first issue, Vaughan contends the trial court erred in ruling that Pennsylvania may not exercise personal jurisdiction over OMSC. *Id.* at 10. He argues that specific jurisdiction is proper in Pennsylvania because "[t]he acts of the corporations which were affiliated with OMSC, and which were acting as its agent in Pennsylvania, engaged in significant conduct that was directly related to the [plaintiff's] claims here." Vaughan's Br. at 29. We agree.

We reverse an order sustaining preliminary objections if there has been an error of law or an abuse of discretion. *N.T. ex rel. K.R.T. v. F.F.*, 118 A.3d 1130, 1134 (Pa.Super. 2015). Preliminary objections that will result in the dismissal of an action should be sustained only in cases that are "clear and free from doubt." *N.T.*, 118 A.3d at 1134 (quoting *Gaboury v. Gaboury*, 988 A.2d 672, 675 (Pa.Super.2009)) (internal quotation marks and citations omitted in *N.T.*).

When considering a preliminary objection to personal jurisdiction, the moving party bears the burden of initially supporting its objection. If the movant carries that burden, the burden then shifts to the party claiming personal jurisdiction is proper to prove that such is the case. **N.T.**, 118 A.3d at 1134; **Mendel v. Williams**, 53 A.3d 810, 816 (Pa.Super. 2012).

There are two theories of personal jurisdiction: general, or all-purpose jurisdiction, and specific, or case-linked jurisdiction. **Goodyear Dunlop Tires Operations, S.A. v. Brown**, 564 U.S. 915, 919 (2011); **Mendel**, 53 A.3d at 817. Here, Vaughan claims personal jurisdiction over OMSC exists under both theories. Because we conclude that OMSC is properly subject in this case to Pennsylvania's specific jurisdiction, we only address the parties' arguments regarding specific jurisdiction.

Whether a state may exercise *in personam* jurisdiction over a non-resident defendant is tested against both the state's long-arm statute and the Due Process Clause of the Fourteenth Amendment. **Kubik v. Letteri**, 614 A.2d 1110, 1112 (Pa. 1992). Pennsylvania's long-arm statute permits courts to exercise personal jurisdiction over a nonresident defendant "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b). Vaughan has asserted jurisdiction under section 5322(b), and the analysis thus condenses to whether jurisdiction is proper under the Fourteenth Amendment. **See Gaboury**, 988 A.2d at 679 n.5.

- 8 -

The extent to which jurisdiction is proscribed by the Due Process Clause is dependent upon the nature and quality of the defendant's contacts with the forum state. Where a defendant has established no meaningful contacts, ties or relations with the forum, the Due Process Clause prohibits the exercise of personal jurisdiction. However, where a defendant has purposefully directed his activities at the residents of the forum, he is presumed to have fair warning that he may be called to suit there.

*Mendel*, 53 A.3d at 817 (internal quotation marks and citations omitted).

"Due process is satisfied when the defendant has (1) purposefully established minimum contacts with the forum state, (2) such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Schiavone v. Aveta*, 41 A.3d 861, 869 (Pa.Super. 2012) (internal quotation marks omitted; citing *Burger King Corp. V. Rudzewicz*, 471 U.S. 462, 474 (1985)). "This 'purposeful availment' requirement ensures that a defendant will not be hauled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (internal quotation marks and citations omitted).

The propriety of the exercise of specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919. *See also Hammons v. Ethicon, Inc.*, 190 A.3d 1248, 1263 (Pa.Super. 2018) (concluding jurisdiction established over non-resident medical device manufacturer based on documented collaboration with resident companies

and individuals to design, test, and manufacture pelvic mesh in Pennsylvania). In contrast to general jurisdiction, specific jurisdiction is narrowly "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919. (quotation marks and citation omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017).

The Supreme Court's decision in *Bristol Myers Squibb* gives useful guidance here. In that case, a group of plaintiffs, including many who did not reside in California, sued Bristol-Myers in California state court alleging injuries from a drug. *Id.* at 1780. The California Supreme Court concluded that jurisdiction existed in that state under a "sliding scale" theory of specific jurisdiction. Under that theory, "'the more wide ranging the defendant's forum contacts, the more readily is shown a connection between the forum contacts and the claim.'" *Id.* at 1778 (quoting *Bristol-Myers Squibb Co. v. Superior Court*, 806, 377 P.3d 874, 889 (Cal. 2016)).

The United States Supreme Court rejected that theory as contrary to "settled principles." *Id.* at 1781. Relevant here, the Court concluded that California lacked specific jurisdiction because there was no adequate connection between California and the non-residents' claims. *Id.* at 1781. The Court pointed out that the nonresidents were not prescribed and did not purchase or ingest the drug in California, and did not sustain injury from the

drug in California. *Id.* The Court also rejected the nonresidents' contention that "the bare fact" that Bristol–Myers had contracted with a California company, along with many other companies nationally, to distribute the drug was sufficient to establish personal jurisdiction in California over Bristol Myers. The Court pointed out there was no evidence that the nonresidents had taken pills distributed through the California company. *Id.* at 1783. Further, the Court pointed out that Bristol-Myers did not develop a marketing strategy for the drug in California nor did it "work on the regulatory approval of the product in California." *Id.* at 1778.

Moreover, the Court in **Bristol Myers Squibb** identified additional circumstances, not present in that case, that it suggested would provide specific jurisdiction. The Court emphasized, "it is not alleged that [Bristol-Myers] engaged in relevant acts together with [the California company]." *Id.* The Court added, "Nor is it alleged that [Bristol-Myers] is derivatively liable for [the California company's] conduct in California." *Id.*

This case involves the additional circumstances to which the Court adverted in **Bristol-Myers Squibb**. Here, OMSC engaged in relevant acts together with OCA, an in-state company, and it is liable for OCA's FDA-related conduct in Pennsylvania. OCA's Vice President, Laura Storms, admitted in her affidavit that OCA is OMSC's agent for purposes of OMSC's statutory reporting requirements with the FDA. **See** Affidavit of Laura Storms, ¶ 4. She also conceded that the agency relationship extends to OMSC's section 510(k) premarket notifications. *Id.*, ¶ 6. Section 510(k) premarket notifications entail

submission of proposed directions for use. ***Buckman***, 531 U.S. at 345. OMSC itself fashions the reprocessing protocol, through "instructions,"[6] and all of Vaughan's claims relate to adequacy of that protocol. OCA's activities in concert with OMSC, and as OMSC's agent, are sufficiently linked to Vaughan's substantive claims to support specific jurisdiction over OMSC in Pennsylvania. ***Bristol-Myers Squibb***, 137 S.Ct. at 1783.

***Daimler AG v. Bauman***, 571 U.S. 117 (2014), is distinguishable. There, residents of Argentina sued Daimler – a company organized under German law that manufactures vehicles primarily in Germany and has its headquarters in Germany – in federal court in California. The plaintiffs alleged that Daimler's Argentinian subsidiary had been involved in atrocities in Argentina during that country's "Dirty War." ***Id.*** at 121. The plaintiffs maintained that the California federal court could exert general personal jurisdiction over Daimler based on the California contacts of Daimler's U.S. subsidiary, Mercedes-Benz USA LLC (MBUSA). ***Id.***

The Ninth Circuit found jurisdiction proper, applying its so-called "agency" test for personal jurisdiction. The court explained that under that test, an in-state subsidiary acts as an agent for an out-of-state parent if the subsidiary performs services sufficiently important to the parent that, if the subsidiary ceased to exist, the foreign parent "would undertake to perform the services itself if it had no representative at all to perform them." ***Bauman v.***

---

[6] ***See*** OMSC's Br. at 56 ("But OMSC as the manufacturer is responsible for designing the product and creating or revising its reprocessing instructions.").

*DaimlerChrysler Corp.*, 644 F.3d 909, 921 (9th Cir. 2011). The Ninth Circuit thus attributed MBUSA's California contacts to Daimler and found it subject to general jurisdiction. 571 U.S. at 134.

The Supreme Court reversed. The Court declined to address whether an "agency theory" is applicable to a general jurisdiction analysis because the Ninth Circuit's reasoning could not be sustained in any event. *Id.* at 135. The Court explained that the Ninth Circuit's "agency" test swept too broadly, since anything a corporation has another entity do is "presumably something" it would do by other means if the other entity did not perform the service. *Id.* at 136. The Court ultimately concluded that, even assuming MBUSA's contacts were imputable to Daimler, and that MBUSA was "at home" in California, it would still reverse the finding of general jurisdiction because the limited contacts with California were evaluated under an improper standard. *Id.* at 136, 139.

*Daimler* does not impede our decision here for several reasons. To begin, it is a general jurisdiction case and here we consider specific jurisdiction. Perhaps more to the point, the Court did not purport to declare agency permanently out of bounds in the personal jurisdiction analysis. To the contrary, it refused to "pass judgment on invocation of an agency theory in the context of general jurisdiction," and then carefully cabined its discussion to the flaws it found in the Ninth Circuit's "agency" test. *Id.* at 135. Indeed, the Court in *Daimler* went so far as to state that agency relationships may be relevant to the existence of specific jurisdiction. *Id.* at 135 n.13. What is more,

three years after ***Daimler***, the Court suggested in ***Bristol-Myers Squibb*** that allegations that a defendant is "derivatively liable" for another's in-forum acts could support a finding of specific jurisdiction.

Here, we have such allegations, and they are supported by evidence, including Storms' concessions that OCA acted as OMSC's agent for FDA purposes. Therefore, we conclude that the activity regarding the scope that occurred in Pennsylvania was sufficient to establish the minimum contacts needed, under a due process analysis, to establish specific jurisdiction in Pennsylvania. ***See Schiavone***, 41 A.3d at 869. As discussed, OCA's actions as OMSC's regulatory agent with the FDA were sufficiently related to Vaughan's substantive claims to support the assertion of specific jurisdiction over OMSC in Pennsylvania. ***See Bristol-Myers Squibb***, 137 S.Ct. at 1783.

Likewise, Pennsylvania's assertion of specific jurisdiction over OMSC is fair and reasonable and does "not offend tradition[al] notions of fair play and substantial justice" as required under the second prong of a due process analysis. ***Id.*** Having availed itself of doing business in this Commonwealth, specifically regarding the scope, the attendant burden of being subject to specific jurisdiction in Pennsylvania regarding the same could hardly be deemed unfair, unreasonable, or even unexpected. Accordingly, having concluded that OMSC is subject to specific personal jurisdiction in Pennsylvania, we reverse the trial court's February 2017 Order.

**B.    The Trial Court Abused Its Discretion in Granting a *Forum Non Conveniens* Dismissal.**

In his second issue, Vaughan contends that Philadelphia, Pennsylvania is the most appropriate forum for this case. Vaughan's Br. at 30. Vaughan notes that, under Pennsylvania law, a plaintiff is entitled to choose the forum in which to pursue his claims and that this choice should not be disturbed except for "weighty reasons." *Id.* at 35 (citing ***Wright v. Aventis Pasteur, Inc.***, 905 A.2d 544 (Pa.Super. 2006)). Asserting "critical factual omissions and errors" by the trial court and directing our attention to what Vaughan suggests is extensive and relevant corporate actions in the greater Philadelphia area, Vaughan urges that we reverse the trial court's decision to grant the joint motion to dismiss for *forum non conveniens*. *Id.* at 30; at 38-50 (citing evidence of corporate conduct); 60 (urging reversal). Once again, we agree.

Motions to transfer venue out of state pursuant to the doctrine of *forum non conveniens* are governed by 42 Pa.C.S.A. § 5322, which provides in relevant part:

> **Inconvenient forum.--**When a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just.

42 Pa.C.S.A. § 5322(e); ***Pisieczko v. Children's Hosp. of Phila.***, 73 A.3d 1260, 1262 n.3 (Pa.Super.2013). We review "a trial court's ruling on a Petition to Dismiss on the grounds of forum non conveniens " pursuant to § 5322(e) for an abuse of discretion. *Id.* at 1262.

Before a court may grant dismissal under subsection 5322(e), Pennsylvania jurisprudence requires the consideration of two factors: "(1) a plaintiff's choice of the place of the suit will not be disturbed except for weighty reasons, and (2) no action will be dismissed unless an alternative forum is available to the plaintiff." **Wright**, 905 A.2d at 547-48 (quoting **Jessop v. ACF Indus, LLC**, 859 A.2d 801, 803 (Pa.Super. 2004) (emphasis omitted).[7]

In order to evaluate whether "weighty reasons" exist to disturb a plaintiff's choice of forum, the trial court must examine private and public interest factors relevant to the case. The private factors include:

> [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial.
>
> . . .
>
> With respect to public factors, the Supreme Court advised:
>
> Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.... There is an

---

[7] Vaughan does not challenge the trial court's finding that an alternative forum is available to him. Thus, we need not address this consideration in detail. The trial court viewed the availability of an alternative forum as a threshold question. **See** Trial Ct. Op. at 9. Noting that all defendants consented to jurisdiction in North Carolina, the court concluded that an alternative forum was available. **Id.** (citing, **et al.**, **Pisieczko v. Children's Hosp. of Philadelphia**, 73 A.3d 1260 (Pa.Super. 2013)). We discern no abuse of the court's discretion in this regard. **Bochetto**, 151 A.3d at 1079.

appropriateness, too, in having the trial ... in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

**Bochetto**, 151 A.3d at 1079-80 (internal formatting modified; quoting **Gulf Oil Corp. v. Gilbert**, 330 U.S. 501, 508-09 (1947)).

Considering these private and public interest factors, the trial court here concluded that North Carolina provided the more appropriate forum and that sufficiently weighty reasons militated against Vaughan's choice to pursue this case in Philadelphia. Trial Ct. Op. at 10-12. We disagree and conclude that the trial court abused its discretion by finding that "weighty" reasons required that Vaughan's choice of forum be disturbed.

The trial court determined that the majority of relevant evidence in this case is located in North Carolina or Japan and not, as Vaughan asserts, in Pennsylvania. **Id.** at 10-11. However, we agree with Vaughan that a plaintiff may establish a close connection with a forum based upon "relevant corporate actions" that take place there. **See** Vaughan's Br. at 54 (citing **Wright**, 905 A.2d at 549). There is little doubt that OCA and OAI conduct extensive operations in Pennsylvania, in relative proximity to Philadelphia. **See, e.g.**, **id.** at 38-39 (listing numerous corporate departments), 42-50 (directing our attention to evidence of OCA and OAI conduct in several areas including regulatory compliance, marketing and distribution and issue response). Further, Vaughan has identified 64 OCA and OAI employees, as well as numerous Custom employees, all located in the greater Philadelphia area.

Vaughan's Supplemental Briefing in Opposition to Joint Motion to Dismiss, Exhibits II & OO.[8] Indeed, evidence critical to support Vaughan's claims will be found in Pennsylvania, where, as discussed, OCA acts as OMSC's agent for FDA purposes.

Moreover, the trial court's concern that Vaughan's fact witnesses for damages are located in North Carolina is not persuasive. **See** Trial Ct. Op. at 10. In our view, any difficulty a **plaintiff** faces in securing evidence necessary to prove a cause of action is not a valid reason to override the plaintiff's forum preference. Thus, we find meritorious Vaughan's criticism of the court's suggestion that "much of the information that [Vaughan] alleges is based in Pennsylvania actually comes from non-parties." Vaughan's Br. at 31 (quoting Trial Ct. Op. at 10). To the contrary, significant evidence may be found in Pennsylvania from parties to this litigation.

Regarding the public interest factors, the court suggested Pennsylvania had comparatively little interest in this case, despite the presence of Pennsylvania defendants, because the injury occurred in North Carolina. Trial Ct. Op. at 11-12. Thus, the court determined, a trial in Philadelphia would unduly burden our courts and jurors. **Id.**

---

[8] We note Vaughan's reference to Custom employees mindful that he asserts no claims against Custom. Nevertheless, testimony from these employees may well prove relevant in this case. In several closely related cases, the plaintiffs have targeted Custom's actions directly. In those cases, such evidence will be essential.

We disagree. As Vaughan noted, he provided "evidence of public interest factors similar to those described by [this Court] in *Wright*[.]" *Id.* In *Wright*, after noting that the defendant pharmaceutical companies marketed vaccines and immune globulin products in Pennsylvania, this Court concluded that the people of Pennsylvania had an interest in the outcome "particularly since [plaintiffs] aver that several of these companies make **critical . . . marketing decisions** in the Commonwealth." *Wright*, 905 A.2d at 551 (emphasis added). Such is the case here. The Pennsylvania-based Olympus companies maintain robust sales and marketing departments in Pennsylvania.

Further, as Vaughan suggests, there is little cause for concern if a Philadelphia judge is called upon to apply the law of another state. *Id.* at 55 (citing *Wright*, 905 A.2d at 551). In *Wright*, we expressed confidence in the ability of our trial judges to accurately apply foreign law:

> [W]hile it is unresolved whether the law of Pennsylvania or the law of Texas will ultimately apply to this case, a factor not even considered by the trial judge, there is no basis upon which to conclude that the law determined to be applicable is beyond the ken of a Philadelphia trial judge.

*Wright*, 905 A.2d at 551. We have no doubt that a jurist in this Commonwealth is more than capable of analyzing and applying the appropriate law – domestic or foreign.

In sum, faced with private and public factors that clearly support Vaughan's choice to proceed in Philadelphia, we conclude there were not weighty reasons to disturb Vaughan's choice of forum. Accordingly, we

conclude the trial court abused its discretion and we reverse the trial court's order granting dismissal on the basis of *forum non conveniens*.

Orders reversed; case remanded; jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/10/19