J-A09008-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NATALI S. RAY, INDIVIDUALLY AND AS THE ADMINISTRATRIX OF THE ESTATE OF RIVER RUSSELL, DECEASED AND JOSEPH B. RUSSELL, INDIVIDUALLY AND AS THE ADMINISTRATOR OF THE ESTATE OF RIVER RUSSELL, DECEASED | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : : | No. 1636 EDA 2021 |
| v. | : : : : | |
| PENSKE LOGISTICS LLC AND PHILLIP JAMES ANTOINE | : | |

Appeal from the Order Entered July 14, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 200601803

BEFORE: NICHOLS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.: **FILED JUNE 22, 2022**

Appellants, Natali S. Ray and Joseph B. Russel, both individually and as the administrators of the estate of Decedent, River Russell (collectively, Appellants), appeal from the order granting the motion to dismiss filed by Appellee, Penske Logistics LLC.[1] Appellants contend that the trial court erred

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Although Appellants named Phillip James Antoine as a defendant, and while Antoine's name remains in the caption, the trial court concluded that Antoine was never properly served and is, therefore, not a party. Trial Ct. Op.,
*(Footnote Continued Next Page)*

in concluding that Penske established *forum non conveniens*.[2] We affirm based on the trial court's opinion.

The trial court summarized the relevant facts of this case as follows:

This case arises out of a hit and run in the early morning hours of June 24, 2019 in League City, Texas.[FN1] At approximately 3:40 A.M., a Penske truck struck nineteen-year-old River Russell as he skateboarded on Farm-to-Market Road 270. The driver of the truck did not stop. Approximately twenty minutes later, a passing motorist noticed Russell lying on the shoulder of the road and summoned authorities. Russell passed away at the hospital two days later, on June 26, 2019. The Penske truck's dashboard camera recorded the entire incident. After an extensive investigation, the League City Police Department arrested the driver of the Penske truck, [Phillip Antoine (Antoine)], and charged him with various crimes, including leaving the scene of the accident. Antoine pled guilty and is currently incarcerated in Texas.

[FN1] League City is a suburb of Houston, located on Interstate 45 between Houston and Galveston.

\* \* \*

On July 8, 2019, [Appellants] filed suit in the District Court of Harris County, Texas (hereinafter "the Texas action"). The Texas action named four defendants — Antoine, Penske Truck Leasing Co., L.P., Penske Leasing and Rental Company, and Renaissance Food Group.[FN2] The Texas action alleged Penske Truck Leasing Co., L.P. and Penske Leasing and Rental Company were liable 1) under the doctrine of *respondeat superior*, and 2) for negligent hiring, negligent training, negligent supervision, and negligent entrustment. [Appellants] voluntarily dismissed the Texas action without prejudice on February 24, 2020.

---

9/22/21, at 12-13, n.6. Appellants have not argued this point or challenged this finding.

[2] An order declining to proceed in a matter on the basis of *forum non conveniens* is an interlocutory order appealable as of right. **See** Pa.R.A.P. 311(c).

[FN2] There are multiple corporate entities that incorporate the Penske name. To avoid confusion, this [c]ourt will use "Penske" to refer to Penske Logistics LLC; any time this [c]ourt refers to a different Penske corporate entity, it will use the corporate entity's full name.

On February 7, 2020, [Appellants] filed a complaint in this [c]ourt (hereinafter the "February action"). The February action named a single defendant, Penske Logistics LLC, and sounded in negligence, intentional spoliation of evidence, wrongful death, and survival. The negligence claim in the February action did not sound in vicarious liability or in negligent hiring, retention, or supervision; rather, it alleged Penske was liable for failing to enact and enforce corporate policies. According to the complaint in the February action, these policy failures emanated in Penske's corporate headquarters in Reading, Berks County, Pennsylvania.

On February 11, 2020, Penske removed the February action to the Eastern District of Pennsylvania because there was complete diversity of citizenship between the parties. Two days later, on February 13, 2020, [Appellants] voluntarily dismissed the February action without prejudice. The notice of dismissal stated [Appellants] dismissed the case for the purpose of refiling to add an additional defendant.

On June 29, 2020, [Appellants] commenced the instant action by filing a Complaint. [Appellants] filed an amended complaint on August 17, 2020. The amended complaint named two defendants, [Penske and Antoine]. With respect to Antoine, the amended complaint alleged he is a citizen and resident of Texas (thereby resulting in a lack of complete diversity among the parties)[.]

The amended complaint sounded in negligence, vicarious liability, wrongful death, survival, and intentional spoliation of evidence.[FN3] In addition to alleging Penske was vicariously liable for Antoine's actions, the instant action averred Penske was liable for failing to enact and enforce corporate policies, and these policy failures originated in Penske's corporate headquarters in Berks County. By Order dated October 13, 2020, the Honorable Giovanni Campbell sustained Penske's preliminary objections to the amended complaint in part and dismissed the request for punitive damages without prejudice. Penske filed an answer with new matter and cross-claim against Antoine, and [Appellants] filed a reply to new matter.

[FN3] The spoliation claim relates to the alleged destruction and/or altering of the video captured by the truck's dashboard cameras.

* * *

On April 16, 2021, Penske filed a motion to dismiss pursuant to 42 Pa.C.S. § 5322(e). In its motion, Penske argued weighty reasons justify the dismissal of this case because the underlying accident occurred in Texas, the accident investigation occurred in Texas, Decedent Russell received all of his care in Texas, and Decedent Russell never resided in Pennsylvania.

Penske argued all of the sources of proof for this case are in Texas. The twenty-four members of the League City Police department who investigated the accident reside in Texas, as do the League City EMS personnel and Clear Lake Hospital personnel who treated Decedent Russell, the coroner who performed Decedent Russell's autopsy, the five physicians and/or counselors who have been treating Decedent Russell's parents and siblings in the aftermath of the accident, Antoine's former coworkers, and at least fourteen other people or entities who possess evidence relating to this case and Penske's defenses. In total, Penske's Motion identified sixty-five potential third-party witnesses, including medical professionals and public servants, who reside in Texas. Additionally, Antoine is currently incarcerated in Texas as a result of this incident. Finally, Penske argued [Appellants'] identification of four high-level corporate witnesses who work at Penske's Berks County headquarters — 1) Jeff Stoicheff, Penske Executive Vice President for Human Resources, 2) Jason Herr, Penske Vice President for Safety, 3) Bill Horack, Penske Manager of Implementations, and 4) Rob Helstrom, Penske Director of Safety and Training — was illusory because these executives were not personally involved in the hiring or termination of Antoine. Rather, the managers who were involved in the hiring and termination of Antoine are located in Texas and/or the mid-western United States, and there were multiple, overlapping, layers of local and regional management between Antoine and these executives.

Penske argued other private factors also justified the dismissal of this case. Sixty-five of the third-parties witnesses Penske identified are not subject to compulsory process in Pennsylvania because they reside in Texas. Holding trial in Pennsylvania would prevent a jury view of the accident scene in Texas. Finally, trying

- 4 -

this case in Pennsylvania would cause undue disruption in the personal lives of current and former Penske employees who will be witnesses in this case, the vast majority of whom are located 1,500 miles away in Texas.[FN5]

[FN5] Penske also briefly argues this case should be tried in Texas to minimize the need for travel during the COVID-19 Pandemic, and notes Texas courts, like Texas businesses, are fully reopened as a result of a March 2, 2021 executive order issued by the Governor of Texas.

According to Penske, the public factors also weighed heavily in favor of dismissal. Penske argued the Philadelphia Court of Common Pleas has a backlog of cases as a result of the 2019 malware attack and closures related to the 2020 COVID-19 Pandemic. Penske argued the Texas courts have less congestion because they have fully reopened following Pandemic closures. To support this conclusion, Penske cited the fact the Philadelphia Court of Common Pleas empaneled six juries per week in April of 2021, while the Harris County courts empaneled sixty jury panels per week. Next, Penske argued Philadelphia has little relationship to the controversy at issue and the citizens of Philadelphia should not be burdened with jury duty involving a dispute that arose in Texas. Finally, Penske argued this case should be dismissed because Texas law applies and the judges of the Philadelphia Court of Common Pleas should not be burdened with interpreting and applying the law of Texas when there is no connection between this case and Philadelphia County.

[Appellants'] response in opposition focused on Penske's corporate headquarters in Berks County and explained in exacting detail how the actions, and alleged failures, of employees at Penske's corporate headquarters relate to this case. Gerald McNamara, Penske's regional Health and Safety Manager, testified a Penske executive based in Berks County, Jason Herr, reviewed, and had the ultimate authority to approve, all Penske safety policies. McNamara testified another Berks County-based executive, Jeff Stoicheff, had the ultimate authority to keep and/or modify human resources policies at Penske relating to drivers. [Appellants] further cited the depositions of Penske employees Beth Cramb and Kelli Courreges, Director of Human Resources for Distribution Center Management, to support their averment that Penske's safety policies and human resources policies were deficient and two Berks County based executives, Stoicheff and Herr, were the individuals who had the ability to modify these

- 5 -

deficient policies. Additionally, [Appellants] cited deposition testimony showing staff at Penske's Berks County headquarters coordinated the investigation of this incident by pulling GPS data to determine the truck involved in this accident and seeking out potential witnesses.

In addition to focusing on Penske's employees in Berks County, [Appellants] responded to the substantive arguments raised by Penske. [Appellants] sought to downplay the significance of any testimony offered by Penske's Texas-based employees, and argued the existence of Texas-based first responders and medical personnel does not require this case to be tried in Texas. Next, [Appellants] challenged Penske's assertion that a view of the accident location would be necessary. [Appellants] argued Antoine's incarceration in Texas should not be a factor in deciding the motion to dismiss. Likewise, [Appellants] argued this Court should not take the COVID-19 pandemic into consideration. Finally, throughout their response, [Appellants] argue the Superior Court's decisions **McConnell v. B. Braun Med. Inc.**, 221 A.3d 221 (Pa. Super. 2019)[,] and **Vaughan v. Olympus America. Inc.**, 208 A.3d 66 (Pa. Super. 2019)[,] require the denial of Penske's Motion. On May 10, 2021, this [c]ourt issued a rule to show cause why the motion to dismiss should be granted. The [c]ourt permitted the parties to conduct discovery relevant to the issue of *forum non conveniens* and scheduled oral argument for July 7, 2021.

[Appellants] filed a supplemental memorandum on July 1, 2021, which cited extensively from the depositions of Stoicheff, Herr, Courreges, and William Horack to support their arguments that Penske initiated its investigation of this incident from its Berks County headquarters and that executives at the Berks County headquarters controlled Penske's safety policies and human resources policies. Penske filed a reply brief which 1) identified additional Texas-based individuals as possible witnesses, 2) distinguished the Superior Court's decisions in **McConnell** and **Vaughn**, and 3) argued the evidence of record shows weighty reasons exist to dismiss this case for *forum non conveniens*.

Trial Ct. Op., 9/22/21, at 1-9 (formatting altered).

The trial court held a hearing on the rule to show cause on July 7, 2021.

On July 14, 2021, the trial court granted Penske's motion and dismissed

Appellants' amended complaint without prejudice to Appellants to refile in Texas. Appellants filed a timely appeal. Both the trial court and Appellants complied with Pa.R.A.P. 1925.

On appeal, Appellants present the following issues:

1. Whether, in light of [the Superior] Court's reversals of *forum non conveniens* dismissals under nearly identical circumstances in [**Vaughan** and **McConnell**], the trial court's *forum non conveniens* dismissal in this case should similarly be reversed because it was predicated on legal error and otherwise constituted a reversible abuse of discretion?

2. Whether the extensive factual record that [Appellants] amassed and presented to the trial court in opposing [Appellee] Penske's motion to dismiss for *forum non conveniens*, demonstrating the centrality to [Appellants'] liability and causation claims of the human resources and safety policies and practices adopted, maintained, and controlled by Pennsylvania-residing supervisory employees working at [Appellee] Penske's Pennsylvania-based headquarters, as well as the fact that Penske conducted its investigation of the fatal collision event from its Pennsylvania-based headquarters, establishes that the trial court erred as a matter of law and otherwise abused its discretion in ordering the dismissal of this case for *forum non conveniens*?

3. Whether the trial court erred as a matter of law or otherwise abused its discretion in ordering that this suit must be refiled in Texas within 90 days from the date of its dismissal in order for "the filing date to be used for statute of limitations in the re-filed action shall be July 8, 2019," because a Pennsylvania trial court does not have the authority to tell a Texas trial court what filing date to use, the order fails to reflect an unconditional waiver of the statute of limitations defense by Penske in Texas, and the trial court's order necessitated the re-filing of this suit in Texas before plaintiffs could obtain the appellate review of the trial court's dismissal order that is available as-of-right under Pennsylvania Rule of Appellate Procedure 311(c)?

Appellants' Brief at 2-4 (some formatting altered).

Appellants' first and second issues are interrelated, and we address them concurrently. Appellants contend that the trial court committed an error of law or abused its discretion in dismissing the matter for *forum non conveniens*. Appellants maintain that they established a basis whereby trial in this matter was proper in Pennsylvania, and that ***Vaughan*** and ***McConnell***, support reversal of the trial court's order. Appellants' Brief at 15-17, 25.

Penske responds that the trial court concluded correctly that the private and public interests support dismissal. Penske's Brief at 25-42. Additionally, Penske contends that ***McConnell*** and ***Vaughan*** are distinguishable and provide no basis upon which to disturb the trial court's exercise of discretion. ***Id.*** at 45.

> We conduct our review bearing in mind the following principles:
>
> Orders on motions to dismiss under the doctrine of *forum non conveniens* are reviewed for an abuse of discretion. This standard applies even where jurisdictional requirements are met. Moreover, if there is any basis for the trial court's decision, the decision must stand.
>
> An abuse of discretion occurs if, *inter alia*, there was an error of law or the judgment was manifestly unreasonable. When reviewing for errors of law, the appellate standard of review is *de novo* and the scope of review is plenary.

***Lyndes v. Penn Central Corporation***, 254 A.3d 725, 732 (Pa. Super. 2021) (citation omitted).

> The doctrine of *forum non conveniens* allows the dismissal of a case when the evidence shows that another forum would be more appropriate:

- 8 -

**Inconvenient forum –** when a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just.

42 Pa.C.S. § 5322(e).

A plaintiff's choice of forum is entitled to deference, but to a somewhat lesser degree when the plaintiff's residence and place of injury are located somewhere else. In any event, the trial court may grant a motion to dismiss on the grounds of *forum non conveniens* only if weighty reasons support disturbing a plaintiff's choice of forum and an alternative forum is available. Furthermore, a court will . . . not dismiss for *forum non conveniens* unless justice strongly militates in favor of relegating the plaintiff to another forum.

To determine if "weighty reasons" overcome the deference afforded to a plaintiff's choice of forum, the trial court must examine both the private and public interest factors involved in the case. The private factors include:

the relative ease of access to sources of proof; availability of compulsory process for attendance for unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

As to the public factors, trial courts must take into account several circumstances, including that:

administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. There is an appropriateness, too, in having the trial . . . in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

With respect to these factors, a defendant must show that the plaintiff's chosen forum is inconvenient to the defendant. A defendant cannot merely assert that dismissal is warranted

because the chosen forum is inconvenient to the plaintiff in some way. Accordingly, it is difficult for a defendant to show that convenience is a factor that weighs in favor of dismissal where it is headquartered in the chosen forum, even if the plaintiff resides elsewhere.

**McConnell**, 221 A.3d 221, 227-28 (formatting altered and some citations omitted).

After reviewing the briefs of the parties, the certified record, and applicable legal authority, we agree with the trial court's rationale and adopt it as our own. The trial court aptly addressed Section 5322, the private and public factors, distinguished this matter from **McConnell** and **Vaughn**, and detailed the weighty reasons required for grating Penske's motion. Accordingly, on this record, we conclude that Appellants are not entitled to relief on their first and second issues.[3] **See** Trial Ct. Op., 9/22/21, at 13-24.

---

[3] In their reply brief, Appellants cite the non-precedential decision in **Parrent v. Penske Logistics LLC**, 2021 WL 6110308 (Pa. Super. filed Dec. 27, 2021) (unpublished. mem.), as persuasive support for their argument that Penske failed to establish that Pennsylvania is an inconvenient forum. Appellants' Reply Brief at 17. In **Parrent**, the plaintiffs were residents of Illinois, and filed suit against Penske in Pennsylvania for injuries caused in a motor-vehicle accident that occurred in Indiana. The plaintiffs' claims included negligent hiring, training, and supervision of the driver, a Penske employee. The trial court in that case granted Penske's motion to dismiss based on *forum non conveniences*, however, on appeal, this Court reversed and concluded that it was reasonable to conclude that the relevant witnesses and documents related to these factors would be located at Penske's headquarters in Reading, Pennsylvania. **Id.** at *3.

**Parrent** is distinguishable from the case at bar for several reasons. First, the **Parrent** Court found that it could not conclude that any public factors supported dismissal because the trial court did not identify any public-interest factors that supported its findings. **Id.** Moreover, the **Parrent** Court

*(Footnote Continued Next Page)*

In the remaining issue on appeal, Appellants contend that the trial court erred in dismissing Appellants' amended complaint because no alternate forum is available. **See** Appellants' Brief at 28-29. Ancillary to this claim, Appellants contends that Pennsylvania trial courts do not have authority over Texas courts and that the trial court erred when it concluded that Penske agreed to waive the statute of limitations defense because Penske's language was conditional, and therefore not a valid waiver of the statute of limitations. **Id.** at 29-34. After review, we conclude that no relief is due.

_____

concluded that there was no evidence in the record of any witnesses in Indiana, an alternate forum, with relevant information concerning claims of negligent supervision and training, and therefore the private-interest factors militated against dismissal of the case in Pennsylvania. Additionally, although the defense in **Parrent** noted that there were two medical professionals located in Indiana, the record did not establish that these potential witnesses were relevant. **Id.** at *4.

In the case at bar, the trial court found that Penske named Texas-based witnesses with specificity, identified sixty-five third-party witnesses who may be relevant to the defense, and Penske summarized the relevance of these witnesses and their testimony. Trial Ct. Op., 9/22/21, at 22. The trial court further considered the location of these witnesses and the trial court's lack of authority to compel the testimony of the witnesses residing in Texas. The trial court also balanced the import of the sixty-five Texas-based witnesses with the three Pennsylvania-based witnesses, and it found that the Pennsylvania witnesses, who were employed by Penske, "represented a narrow sliver of the witnesses expected to be called at trial and [these Penske employees] could all be compelled to appear if this case was tried in Texas, while none of the sixty-five third-party witnesses identified by Penske could be compelled to appear in a Pennsylvania court." **Id.** For these reasons, we conclude that **Parrent** is readily distinguishable, and we do not conclude that it requires reversal of the order in the instant case.

- 11 -

As the trial court pointed out, Appellants never presented this issue to the trial court, and they failed to raise it in their Rule 1925(b) statement.[4] Trial Ct. Op., 9/22/21, at 12. Accordingly, the trial court concluded this issue was waived. *Id.* Upon review, we are constrained to agree. *See, e.g., Linde v. Linde*, 220 A.3d 1119 (Pa. Super. 2019) (providing that issues that are not raised in a court-ordered Rule 1925(b) statement are deemed waived on appeal); *see also* Pa.R.A.P. 302(a) (stating that issues not raised in the trial court are waived and cannot be raised for the first time on appeal).

In any event, were we to reach the merits, we would conclude that no relief is due. Appellants state that a Pennsylvania trial court has no authority over Texas courts and cite *Farley v. McDonnell Douglas Truck Services, Inc.*, 638 A.2d 1027 (Pa. Super. 1994), as support. Appellants' Brief at 29-30. Although Appellants are correct in pointing out that Pennsylvania courts have no power to direct the proceedings in a separate state, we note that the *Farley* Court further explained as follows:

---

[4] We note that one aspect of Appellants third issue, wherein they claim that the trial court's order required Appellants to simultaneously litigate this action in Texas before the completion of appellate review in Pennsylvania, *see* Appellants' Brief at 29, was in fact presented in their Rule 1925(b) statement. Rule 1925(b) Statement, 9/2/21, at ¶7. However, as the trial court concluded, *see* Trial Ct. Op., 9/22/21, at 23, this issue is meritless because Appellants never sought a supersedeas or stay. *See, e.g., Pennsylvania Public Utility Com'n v. Process Gas Consumers Group*, 467 A.2d 805 (Pa. 1983); Pa.R.A.P. 1732, 1733. Moreover, this limited question does not preserve or support Appellants' overarching claim that there was no alternate forum. Rather, because Appellants could have pursued the action in Texas, there was an alternate forum.

- 12 -

We note that the trial court's order permits the appellants to file the complaint within thirty days in the proper court in New York State. Our courts lack the authority to transfer matters to courts of our sister states. Therefore, a Pennsylvania court cannot give appellants permission to proceed with their case in a sister state regardless of whether the statute of limitations has run in the sister state. **Rather, the trial court should either retain jurisdiction or dismiss on the condition that the defendants will accept service and not invoke the statute of limitations when the case is brought in the new forum**.

*Id*. at 1032 n.2. (citations omitted) (emphasis added).

Here, the trial court did not direct a Texas court to take any particular course of action. Rather, the trial court dismissed Appellants' complaint on the condition that Penske would accept service and not invoke the statute of limitations defense if the case is brought in the new forum. *See* Order, 7/14/21. The trial court's procedure in this instance follows the directive from *Farley*. On this record, were we to reach this issue, we would find no error of law or abuse of discretion.

Moreover, Appellants' argument that there was no forum apart from Pennsylvania is misplaced. Although a trial court is not permitted to dismiss an action for *forum non conveniens* where there is no alternate forum, *see* ***Plum v. Tampax, Inc.,*** 160 A.2d 549, 553 (Pa. 1960) (stating that there is not an alternate forum if plaintiff's cause of action would elsewhere be barred by the statute of limitations unless the court is willing to accept defendant's stipulation that it will not raise this defense), in the instant case, there was an alternate forum in Texas. *See* Trial Ct. Op., 9/22/21, at 12-13. As stated previously, the trial court accepted Penske's stipulation that Penske would

accept service in Texas and not raise the defense of statute of limitations, and this stipulation supported the trial court's conclusion that there was an alternate forum.

For these reasons, we conclude that there was no error or an abuse for discretion in the trial court granting Penske's motion to dismiss for *forum non conveniens*.  On this record, we affirm based on the trial court's opinion.

Order affirmed.

Judgment Entered.



Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/22/2022

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CIVIL TRIAL DIVISION**

| | |
|---|---|
| NATALI S. RAY, Individually and as : <br> the Administratrix of the Estate of : <br> RIVER RUSSELL, Deceased, et al. : <br><br> v. : <br> : <br> PENSKE LOGISTICS LLC and : <br> PHILLIP JAMES ANTOINE : | JUNE TERM 2020 <br><br> NO. 1803 <br> 1636 EDA 2021 <br><br> OPFLD-Russell Etal Vs Penske Logistics Llc Etal <br><br> 20060180300096 |

**OPINION**

NEW, J.                                                September 30, 2021

For the reasons set forth below, this Court respectfully requests the Superior Court affirm

its Order dated July 14, 2021 dismissing this case under the doctrine of *forum non conveniens*.

**FACTUAL HISTORY**

This case arises out of a hit and run in the early morning hours of June 24, 2019 in

League City, Texas.[1] At approximately 3:40 A.M., a Penske truck struck nineteen year-old

River Russell as he skateboarded on Farm-to-Market Road 270. Amended Complaint at ¶¶ 10-

11. The driver of the truck did not stop. Id. at ¶ 11. Approximately twenty minutes later, a

passing motorist noticed Russell lying on the shoulder of the road and summoned authorities. Id.

at ¶ 12. Russell passed away at the hospital two days later, on June 26, 2019. Id. The Penske

truck's dashboard camera recorded the entire incident. Id. at ¶¶ 13-17. After an extensive

investigation, the League City Police Department arrested the driver of the Penske truck,

Defendant Phillip Antoine, and charged him with various crimes, including leaving the scene of

the accident. Id. Defendant Antoine pled guilty and is currently incarcerated in Texas. Motion

to Dismiss at ¶ 97.

---

[1] League City is a suburb of Houston, located on Interstate 45 between Houston and Galveston.

1

## PROCEDURAL HISTORY

On July 8, 2019, Plaintiffs filed suit in the District Court of Harris County, Texas (hereinafter "the Texas action"). See Motion to Dismiss at Ex. "1." The Texas action named four defendants – Defendant Antoine, Penske Truck Leasing Co., L.P., Penske Leasing and Rental Company, and Renaissance Food Group.[2] Id. The Texas action alleged Penske Truck Leasing Co., L.P. and Penske Leasing and Rental Company were liable 1) under the doctrine of *respondeat superior*, and 2) for negligent hiring, negligent training, negligent supervision, and negligent entrustment. Id. at ¶ 5.3, 5.4, 8.2. Plaintiffs voluntarily dismissed the Texas action without prejudice on February 24, 2020. See Motion to Dismiss at Ex. "2."

On February 7, 2020, Plaintiff filed a Complaint in this Court (hereinafter the "February action"). See Motion to Dismiss at Ex. "3" (Complaint in the February action). The February action named a single defendant, Penske Logistics LLC, and sounded in negligence, intentional spoliation of evidence, wrongful death, and survival. Id.; see also Ray, et al. v. Penske Logicstic LLC, February Term 2020 No. 787 (Phila. Ct. Com. Pl. 2020). The negligence claim in the February action did not sound in vicarious liability or in negligent hiring/retention/supervision; rather, it alleged Penske was liable for failing to enact and enforce corporate policies. Id. at ¶¶ 28-35. According to the complaint in the February action, these policy failures emanated in Penske's corporate headquarters in Reading, Berks County, Pennsylvania. Id. at ¶ 6(b).

On February 11, 2020, Penske removed the February action to the Eastern District of Pennsylvania because there was complete diversity of citizenship between the parties. See

---

[2] There are multiple corporate entities that incorporate the Penske name. To avoid confusion, this Court will use "Penske" to refer to Penske Logistics LLC; any time this Court refers to a different Penske corporate entity, it will use the corporate entity's full name.

2

Motion to Dismiss at Ex. "4." Two days later, on February 13, 2020, Plaintiffs voluntarily dismissed the February action without prejudice. See Motion to Dismiss at Ex. "5." The Notice of Dismissal stated Plaintiff dismissed the case "for the purpose of refiling to add an additional defendant." Id. at ¶ 2.

On June 29, 2020, Plaintiffs commenced the instant action by filing a Complaint. Plaintiffs filed an Amended Complaint on August 17, 2020. The Amended Complaint named two defendants, Penske Logistics LLC and Phillip Antoine. With respect to Defendant Antoine, the Amended Complaint alleged he is "a citizen and resident of Texas (*thereby resulting in a lack of complete diversity among the parties*) . . . ." Amended Complaint at ¶ 7 (emphasis added).

The Amended Complaint sounded in negligence, vicarious liability, wrongful death, survival, and intentional spoliation of evidence.[3] In addition to alleging Penske was vicariously liable for Defendant Antoine's actions, the instant action averred Penske was liable for failing to enact and enforce corporate policies, Amended Complaint at ¶¶ 31-44, and these policy failures originated in Penske's corporate headquarters in Berks County. Id. at ¶ 6(b). By Order dated October 13, 2020, the Honorable Giovanni Campbell sustained Penske's Preliminary Objections to the Amended Complaint in part and dismissed the request for punitive damages without prejudice. Penske filed an Answer with New Matter and Cross-claim against Defendant Antoine, and Plaintiffs filed a Reply to New Matter.

---

[3] The spoliation claim relates to the alleged destruction and/or altering of the video captured by the truck's dashboard cameras. Amended Complaint at ¶¶ 51-56.

3

## THE PARTIES' THEORIES OF THE CASE

Plaintiffs and Penske agree Defendant Antoine drove the Penske truck that struck Decedent Russell, see Amended Complaint at ¶¶ 11-17, Motion at Ex. 46, Penske Supplemental Answers to Request for Admissions, at Nos. 1 and 2 (admitting Defendant Antoine was employed by Penske at the time of the accident and was operating the Penske truck that struck Decedent Russell); however, the issues of liability and damages remain hotly contested.

As set forth more fully in the Amended Complaint and in their Response to the Motion to Dismiss, Plaintiffs' theory of negligence against Penske is two-fold. First, Plaintiffs alleged Penske is liable for the actions of their employee, Defendant Antoine, under the doctrine of *respondeat superior*. Amended Complaint at ¶¶ 39 – 44. Second, Plaintiffs averred Penske failed to enact proper policies related to screening prospective drivers and failed to enforce existing policies. Amended Complaint at ¶¶ 30-38; see also Plaintiffs' Response, "Preliminary Statement" at pp. 6-24.[4] Penske's policies prohibit the hiring or retention of felons. When he was hired by Penske in 2018, Defendant Antoine was awaiting trial on criminal charges and he was subsequently convicted of felony arson. Id. Defendant Antoine failed to inform Penske of this subsequent conviction and Penske failed to perform any post-hiring follow-up related to the

---

[4] Over the past few years, this Court has noticed a growing trend in which parties include a "preliminary statement" in their pleadings and motions. These "preliminary statements," which are not contemplated by the relevant Rules of Civil Procedure, are often used as a soapbox to air grievances about an opponent's perceived shortcomings (whether procedural, substantive, or personal) or to improperly influence the Court through emotionally charged rhetoric.

In this case, Plaintiffs' Response to the Motion to Dismiss contains a "Preliminary Statement" comprising seventy-six pages of the one-hundred page Response. Since the numbered paragraphs of Plaintiffs' Response refer to, and incorporate by reference, the "Preliminary Statement," this Court reluctantly cites the "Preliminary Statement" for ease of reference; however, this Court's citation to the "Preliminary Statement" should not be viewed as this Court's approval of its inclusion.

4

pending charges. Id. According to Plaintiffs, if Penske engaged in post-hiring follow-up, they would have discovered Defendant Antoine's conviction for felony arson and terminated his employment prior to the date of the accident. Id.

Penske's defense challenged both liability and damages. First, Penske argued Decedent Russell may have committed suicide. To support this theory, Penske pointed to Decedent Russell's shoes, which contained the handwritten inscription "kill me." Penske's New Matter at ¶¶ 2, 11-12; Motion to Dismiss at ¶¶ 44, 51. Second, Penske asserted the defense of comparative negligence based Decedent Russell's blood alcohol content (BAC) of 0.19% when he arrived at the hospital. New Matter at ¶ 12; Motion to Dismiss at ¶¶ 46, 50, 147. Finally, Penske sought to minimize any pain and suffering damages by citing medical records which suggest Russell died instantly. Motion to Dismiss at ¶ 56, Ex. "12" (Clear Lake Hospital records dated June 26, 2019 showing an admitting diagnosis of "brain death").

## THE MOTION TO DISMISS

On April 16, 2021, Penske filed a Motion to Dismiss pursuant to 42 Pa. C.S. § 5322(e). In its Motion, Penske argued weighty reasons justify the dismissal of this case because the underlying accident occurred in Texas, the accident investigation occurred in Texas, Decedent Russell received all of his care in Texas, and Decedent Russell never resided in Pennsylvania. Motion to Dismiss at ¶¶ 34 – 46.

Penske argued all of the sources of proof for this case are in Texas. The twenty-four members of the League City Police department who investigated the accident reside in Texas, as do the League City EMS personnel and Clear Lake Hospital personnel who treated Decedent Russell, the coroner who performed Decedent Russell's autopsy, the five physicians and/or counselors who have been treating Decedent Russell's parents and siblings in the aftermath of

5

the accident, Defendant Antoine's former coworkers, and at least fourteen other people or entities "who possess evidence relating to this case and Penske's defenses." Motion to Dismiss at ¶¶ 48-71. In total, Penske's Motion identified sixty-five potential third-party witnesses, including medical professionals and public servants, who reside in Texas. Id. at ¶ 97, Ex. "10," Ex. "11." Additionally, Defendant Antoine is currently incarcerated in Texas as a result of this incident. Id. at ¶ 96. Finally, Penske argued Plaintiff's identification of four high-level corporate witnesses who work at Penske's Berks County headquarters – 1) Jeff Stoicheff, Penske Executive Vice President for Human Resources, 2) Jason Herr, Penske Vice President for Safety, 3) Bill Horack, Penske Manager of Implementations, and 4) Rob Helstrom, Penske Director of Safety and Training – was illusory because these executives were not personally involved in the hiring or termination of Defendant Antoine. Rather, the managers who were involved in the hiring and termination of Defendant Antoine are located in Texas and/or the mid-western United States, and there were multiple, overlapping, layers of local and regional management between Defendant Antoine and these executives. ¶¶ 110 – 118.

Penske argued other private factors also justified the dismissal of this case. Sixty-five of the third-parties witnesses Defendant Penske identified are not subject to compulsory process in Pennsylvania because they reside in Texas. Motion to Dismiss at ¶¶ 132-135. Holding trial in Pennsylvania would prevent a jury view of the accident scene in Texas. Id. at ¶¶ 146-150. Finally, trying this case in Pennsylvania would cause undue disruption in the personal lives of current and former Penske employees who will be witnesses in this case, the vast majority of whom are located 1,500 miles away in Texas.[5] Id. at ¶¶151-152.

---

[5] Penske also briefly argues this case should be tried in Texas to minimize the need for travel during the COVID-19 Pandemic, and notes Texas courts, like Texas businesses, are fully

According to Penske, the public factors also weighed heavily in favor of dismissal. Penske argued the Philadelphia Court of Common Pleas has a backlog of cases as a result of the 2019 malware attack and closures related to the 2020 COVID-19 Pandemic. Motion to Dismiss at ¶¶ 166-176. Penske argued the Texas courts have less congestion because they have fully reopened following Pandemic closures. To support this conclusion, Penske cited the fact the Philadelphia Court of Common Pleas empaneled six juries per week in April of 2021, while the Harris County courts empaneled sixty jury panels per week. Id. at ¶¶ 176-181. Next, Penske argued Philadelphia has little relationship to the controversy at issue and the citizens of Philadelphia should not be burdened with jury duty involving a dispute that arose in Texas. Id. at ¶¶ 184-197. Finally, Penske argued this case should be dismissed because Texas law applies and the judges of the Philadelphia Court of Common Pleas should not be burdened with interpreting and applying the law of Texas when there is no connection between this case and Philadelphia County. Id. at ¶¶ 198-200.

Plaintiffs' Response in Opposition focused on Penske's corporate headquarters in Berks County and explained in exacting detail how the actions, and alleged failures, of employees at Penske's corporate headquarters relate to this case. Gerald McNamara, Penske's regional Health and Safety Manager, testified a Penske executive based in Berks County, Jason Herr, reviewed, and had the ultimate authority to approve, all Penske safety policies. See Plaintiffs' Response, "Preliminary Statement" at pp. 10-11. McNamara testified another Berks County-based executive, Jeff Stoicheff, had the ultimate authority to keep and/or modify human resources policies at Penske relating to drivers. Id. at p. 11. Plaintiffs further cited the depositions of

reopened as a result of a March 2, 2021 executive order issued by the Governor of Texas. Motion to Dismiss at ¶¶ 153-165.

7

Penske employees Beth Cramb and Kelli Courreges, Director of Human Resources for Distribution Center Management, to support their averment that Penske's safety policies and human resources policies were deficient and two Berks County based executives, Stoicheff and Herr, were the individuals who had the ability to modify these deficient policies. Id. at pp. 12-24. Additionally, Plaintiffs cited deposition testimony showing staff at Penske's Berks County headquarters coordinated the investigation of this incident by pulling GPS data to determine the truck involved in this accident and seeking out potential witnesses. Id. at pp. 34-43.

In addition to focusing on Penske's employees in Berks County, Plaintiffs responded to the substantive arguments raised by Penske. Plaintiffs sought to downplay the significance of any testimony offered by Penske's Texas-based employees, Response, Preliminary Statement, at pp. 49-63, and argued the existence of Texas-based first responders and medical personnel does not require this case to be tried in Texas. Id. at pp. 63-70. Next, Plaintiffs challenged Penske's assertion that a view of the accident location would be necessary. Id. at pp. 70-72. Plaintiffs argued Defendant Antoine's incarceration in Texas should not be a factor in deciding the motion to dismiss. Id. at pp. 73-74. Likewise, Plaintiffs argued this Court should not take the COVID-19 pandemic into consideration. Id. at pp. 74-76. Finally, throughout their Response, Plaintiffs argue the Superior Court's decisions McConnell v. B. Braun Med. Inc., 221 A.3d 221 (Pa. Super. Ct. 2019) and Vaughan v. Olympus America, Inc., 208 A.3d 66 (Pa. Super. Ct. 2019) require the denial of Penske's Motion. See id. at pp. 5-6, 24-34.

On May 10, 2021, this Court issued a Rule to show cause why the Motion to Dismiss should be granted. The Court permitted the parties to conduct discovery relevant to the issue of *forum non conveniens* and scheduled oral argument for July 7, 2021.

Plaintiffs filed a Supplemental Memorandum on July 1, 2021, which cited extensively from the depositions of Stoicheff, Herr, Courreges, and William Horack to support their arguments that Penske initiated its investigation of this incident from its Berks County headquarters and that executives at the Berks County headquarters controlled Penske's safety policies and human resources policies. See Plaintiffs' Supplemental Memorandum. Penske filed a Reply Brief which 1) identified additional Texas-based individuals as possible witnesses, 2) distinguished the Superior Court's decisions in McConnell and Vaughn, and 3) argued the evidence of record shows weighty reasons exist to dismiss this case for *forum non conveniens*. See Penske's Reply.

At the Rule hearing on July 7, 2021, the parties' arguments highlighted the arguments set forth in their respective briefs. By Order dated July 14, 2021, this Court granted Penske's Motion and dismissed this case without prejudice. Plaintiffs appealed to the Superior Court.

Plaintiffs Statement of Errors filed pursuant to Pa.R.A.P. 1925(b) avers this Court committed seven errors:

1) The trial court erred and/or otherwise abused its discretion in ordering the dismissal of this suit for *forum non conveniens*, to be re-filed in Texas.

2) In holding that 'weighty reasons' existed to override plaintiffs' choice to sue a Pennsylvania-based company in its home state of Pennsylvania, the trial court misapplied the law and rendered a manifestly unreasonable decision, especially given the centrality to plaintiffs' liability and causation claims implicating [Penske's] human resources and safety policies and practices which were adopted, maintained, and controlled by department heads at [Penske] who are Pennsylvania residents based at [Penkse's] Pennsylvania-based headquarters.

3) In concluding that the relevant private and public interests weighed strongly against plaintiffs' chosen forum of Pennsylvania, notwithstanding the arguments and evidence that Plaintiffs presented to the contrary, the trial court erred as a matter of law

9

and otherwise abused its discretion.

4) The trial court's order dismissing this case for *forum non conveniens* should be vacated or reversed as legally erroneous and an abuse of discretion pursuant to the Pa. Superior Court's rulings in McConnell v. B. Braun Med. Inc., 221 A.3d 221 (Pa. Super. Ct. 2019), Vaughan v. Olympus America, Inc., 208 A.3d 66 (Pa. Super. Ct. 2019), and Robbins v. Consolidated Rail Corp., 212 A.3d 81 (Pa. Super. Ct. 2019).

5) The extensive factual record that plaintiffs amassed and presented to the trial court in opposing defendant [Penske's] motion to dismiss for *forum non conveniens*, demonstrating the centrality to plaintiffs' liability and causation claims implicating the human resources and safety policies and practices adopted, maintained and controlled by Pennsylvania-residing supervisory employees working at defendant [Penske's] Pennsylvania–based headquarters, as well as the fact that [Penske] conducted its investigation of the fatal collision event from its Pennsylvania-based headquarters (including but not limited to having Pennsylvania-based employees of [Penske] track down and identify the specific vehicle involved in the collision from Pennsylvania, and having a Pennsylvania-based employee of [Penske] obtain, via work performed in Pennsylvania, the [video recording] of the collision event that was captured by on-vehicle [video recording] equipment) establishes that the trial court erred as a matter of law and otherwise abused its discretion in ordering the dismissal of this case for *forum non conveniens*.

6) The trial court erred as a matter of law and otherwise abused its discretion to the extent that it relied on meritless positions advanced by Penske including but not limited to the location of irrelevant and/or nominal witnesses, a purported need for a site inspection years after the incident even though the collision which happened years ago was captured on [video recording] devices installed on the Penske vehicle involved in the collision, and a purported need for this case to be litigated in Texas due to alleged COVID-19 issues.

7) The trial court erred as a matter of law and otherwise abused its discretion in ordering that this suit must be refiled in Texas within 90 days from the date of its dismissal in order for "the filing date to be used for statute of limitations in the re–filed action shall be July 8, 2019," because that aspect of the trial court's order in effect requires the re–filing of this suit in Texas before plaintiffs can obtain the appellate review of the trial court's dismissal order that

10

is available as of right under Pennsylvania Rule of Appellate Procedure 311(c).

Plaintiffs' Statement of Matters at pp. 1-2.

## STANDARD OF REVIEW

When ruling on a motion to dismiss under 42 Pa.C.S.A. § 5322(e), trial courts are vested with the discretion to determine whether "substantial justice" requires the dismissal of the action; therefore, appellate courts will only reverse the trial court if it abused its discretion. Vaughan, 208 A.3d at 75 (Pa. Super. Ct. 2019). "An abuse of discretion occurs if, *inter alia*, there was an error of law or the judgment was manifestly unreasonable." Wright v. Consolidated Rail Corporation, 215 A.3d 982, 990 (Pa. Super. Ct. 2019). "[I]f there is *any basis* for the trial court's decision, *the decision must stand.*" Id. (emphasis added). "Merely because an appellate court would have reached a different result than the trial court does not constitute a finding of an abuse of discretion." Mader v. Duquesne Light Co., 241 A.3d 600, 607 (Pa. 2020); see also Bratic v. Rubendall, 99 A.3d 1, 10 (Pa. 2014) ("Although the Superior Court may have reached a conclusion different than the trial court, this does not justify disturbing the ruling; the Superior Court effectively substituted its judgment for that of the trial court, which it may not do").

## ANALYSIS

Section 5322(e) provides: "When a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just." 42 Pa. C.S. § 5322(e). (citation and internal quotations omitted).

In determining whether to dismiss a suit based on *forum non conveniens*, the court must consider two important factors: 1) a plaintiff's choice of forum will not be disturbed except for weighty reasons; and 2) no action will be dismissed unless an alternative forum is available to

11

the plaintiff. E.g. Engstrom v. Bayer Corp., 855 A.2d 52, 55 (Pa. Super. 2004). In addressing whether an alternative forum exists, our Supreme Court explained:

> Because of [this] factor, the suit will be entertained, no matter how inappropriate the forum may be, if defendant cannot be subjected to jurisdiction in other states. The same will be true if plaintiff's cause of action would elsewhere be barred by the statute of limitations, unless the court is willing to accept defendant's stipulation that he will not raise this defense in the second state.

Plum v. Tampax, Inc., 160 A.2d 549, 551 (Pa. 1960). In this case, an alternate forum exists because Penske expressly agreed to submit to personal jurisdiction in Harris County, Texas, or Galveston County, Texas, and to use July 8, 2019 as the filing date for statute of limitations purposes if Plaintiffs refile this action in Texas within ninety days. Motion to Dismiss at ¶¶ 75-76.

To the extent Plaintiffs argue an alternate forum does not exist because Defendant Antoine has not made similar stipulations, Plaintiffs' argument fails because Plaintiffs did not raise this issue in their Statement of Matters; therefore, this issue is waived. Commonwealth v. Lord, 719 A.2d 306, 309 (Pa. 1998)("from this date forward . . . Appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived").[6]

---

[6] If the issue has not been waived, Plaintiffs' argument still fails because Defendant Antoine was not properly served. The Affidavit of Service shows Defendant Antoine was purportedly served by certified mail in Houston, Texas; however, the certified mail "green card" contains no signature from the recipient. See Affidavit of Service filed September 24, 2020. Since the "green card" attached to the Affidavit of Service contains no signatures, Plaintiffs failed to serve Defendant Antoine under the applicable Rules of Civil Procedure. See ANS Associates, Inc. v. Gotham Ins. Co., 42 A.3d 1074, 1076 (Pa. Super. Ct. 2012) (holding an out of state defendant was not properly served by mail under Pa.R.C.P. 403 – 405 because the receipt attached to the affidavit of service did not contain a signature of the recipient). Plaintiffs did not properly serve Defendant Antoine under Texas law either. See Tex. R. Civ. P. 107(c) ("When the citation was served by registered or certified mail as authorized by Rule 106, the return by the officer or

Since an alternate forum exists, this Court shifts its focus to whether "weighty reasons" exist to disturb Plaintiffs' chosen forum. At the outset, this Court notes Plaintiffs are residents of Texas, and the accident occurred in Texas. "A court may find that the presumption in favor of a plaintiff's choice of forum may be less stringently considered when the plaintiff has chosen a foreign forum to litigate his or her claims." Horvatter v. CSX Transportation, Inc., 193 A.3d 420, 424 (Pa. Super. Ct. 2018). However, this does not mean a plaintiff's chosen forum is not entitled to *any* deference. See Bochetto v. Piper Aircraft Co., 94 A.3d 1044, 1056 (Pa. Super. Ct. 2014) (stating "While foreign plaintiffs enjoy 'less deference' with regard to their choice of forum, their choice is still entitled to solicitude.") (internal citation omitted). Bearing this in mind, the Court must examine whether Penske established the existence of weighty reasons to dismiss this case.

"[T]he trial court must examine both the private and public interests involved" to determine whether weighty reasons exist to overcome a plaintiff's chosen forum. Jessop v. ACF Indus., LLC, 859 A.2d 801, 803 (Pa. Super. 2004). "These two sets of factors are not mutually exclusive but rather supplement each other." Plum, 160 A.2d at 562. To justify dismissal on the basis of forum *non conveniens*, "the private and public factors must be strongly in favor of the party moving for dismissal." Jessop, 859 A.2d at 804.

The private factors the trial court must consider include:

> the relative ease of access to sources of proof; availability of the compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, [sic] witnesses; possibility of a view of the premises, if a view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

authorized person must also contain the return receipt *with the addressee's signature*") (emphasis added).

13

Jessop, 859 A.2d at 803 (quoting D'Alterio v. N.J. Transit Rail Operations, Inc., 845 A.2d 850, 852 (Pa. Super. 2004)). Here, the private factors favor dismissal. The accident giving rise to this case occurred in Texas, Decedent Russell was a resident of Texas, and all of Decedent Russell's medical care occurred in Texas.

Trying this case in Texas provides demonstrably easier access to the necessary sources of proof. Twenty-four members of the League City Police Department investigated the accident giving rise to this case. See Motion to Dismiss at ¶ 49, Ex. 10, Ex. 11. Three members of the League City Emergency Medical Services treated Decedent Russell at the scene and transported him to this hospital. Id. at Ex. 50. The medical staff at Clear Lake Hospital treated Decedent Russell, and Dr. Francis Welsh pronounced his death. Id. at Ex. 12. A forensic investigation was conducted by the Harris County Institute of Forensic Sciences, id. at Ex. 49, and an autopsy was completed by Assistant Medical Examiner Garrett Phillips, M.D. Id. at Ex. 34. In total, Penske identified over sixty-five third-party witnesses located in Texas who may be called as witnesses at trial. Id. at Ex. 11. While all of these individuals may not testify at trial, each of the Texas public servants and front-line medical workers possess information which may be relevant to Penske's defenses. Holding trial in Texas would provide easier access to these witnesses.

Additionally, Defendant Antoine is incarcerated in Texas. Motion to Dismiss at ¶ 96; Response, Preliminary Statement at pp. 73-74. To the extent Defendant Antoine participates in this case, either as a party or as a witness, special arrangements will need to be made with the Texas prison system for Antoine to appear at trial. A Texas court has jurisdiction to issue any orders necessary to permit Antoine's appearance at trial, either in person or virtually. This Court, on the other hand, has no jurisdiction over the Texas prison system. Accordingly, trial in Texas provides easier access to Defendant Antoine.

14

In the highly unlikely event the Texas prison system permits Defendant Antoine to appear in-person at trial in Pennsylvania, practical considerations weigh heavily in favor of dismissal. Arrangements would need to be made for Defendant Antoine to be accepted into, and housed by, Pennsylvania's penal system. There would be significant costs for Texas prison system employees to escort Defendant Antoine to and from Pennsylvania. The court system would incur costs to transport Defendant Antoine between the courthouse and the prison each day for trial. In contrast, if this case was tried in Texas, Defendant Antoine could be transferred utilizing established procedures to a facility within the Texas prison system that is located near the courthouse in which this trial is occurring. Accordingly, trying this case in Texas would alleviate many of the practical considerations associated with Defendant Antoine appearing in-person at trial.

The existence of over sixty out-of-state witnesses also weighs heavily on the second Jessop factor – the availability of compulsory process for unwilling witnesses, and the costs of attendance for willing witnesses. Texas has not passed the Interstate Deposition and Discovery Act, see McConnell, 221 A.3d at 226 n5; therefore, Pennsylvania courts lack the ability to compel discovery from Texas residents. Pennsylvania's inability to compel discovery from a third-party Texas resident has already been demonstrated once in this contentious litigation. See Motion to Quash, filed on June 22, 2021 (Non-party Jose Medrano, a resident of Texas, sought to quash Plaintiffs' subpoena to attend a deposition because the subpoena was issued by a Pennsylvania Court and not a Texas Court); July 13, 2021 Order of the Honorable Karen Shreeves-Johns granting the Motion to Quash. Similarly, Pennsylvania courts lack jurisdiction to compel the attendance of Texas residents at trial. See 42 Pa. C.S. § 5905 ("Every court of record shall have power in any civil or criminal matter to issue subpoenas to testify ... *into any*

15

*county of this Commonwealth* to witnesses to appear before the court or any appointive judicial officer"). The costs of attendance for willing witnesses also weighs in favor of dismissal because any willing witnesses will necessarily incur substantial travel costs, including airfare and lodging, as a result of the 1,500 mile trip from Texas to Pennsylvania. Accordingly, holding trial in Pennsylvania will significantly hamper Penske's ability to defend this case.

Finally, to the extent any party seeks a view of the accident location, the courts of Harris County and Galveston County provide far easier access than this Court. [7]

Plaintiffs devoted a substantial portion of their Response, and the entirety of their Supplemental Brief, to show executives and employees in Penske's Berks County headquarters possess information relevant to Plaintiffs' claims. The deposition testimony cited by Plaintiffs showed, with respect to safety policies and human resources policies, the proverbial "buck" stops in the Berks County offices of Messrs. Herr and Stoicheff. Likewise, the evidence adduced by Plaintiffs showed Penske employees from Berks County assisted in the investigation of this incident. However, the existence of this evidence does not, *ipso facto*, compel the denial of the Motion to Dismiss.

The evidence relating to Penske's Berks County activities represents a very narrow portion of the totality of the evidence. All of the evidence cited by Plaintiffs in their Response and Reply relates to a small handful of Pennsylvania residents, all of whom are Penske employees and executives. If this case goes to trial in Texas, Plaintiffs could secure the

---

[7] Penske's Motion states "a site visit to the location where this incident occurred will likely be helpful to a jury and will be important to Penske's comparative negligence defense." Motion at ¶ 148. Plaintiffs respond to this assertion with mockery and derision. See Plaintiffs' Response, "Preliminary Statement" at pp. 71-72. While this Court disapproves of the tenor of Plaintiffs' argument, this Court notes that in its thirty years on the bench, a defendant has never requested a view during a trial.

16

testimony of each of these employees and executives by serving them with notices to attend. Conversely, trying this case in Pennsylvania would deprive Penske of the ability to compel the attendance at trial of *any* of the sixty-five third-party witnesses that may provide evidence relevant to Penske's defenses.

Plaintiffs' argument the Motion to Dismiss must be denied because the sixty-five third-party witnesses will have scant relevant evidence to offer in light of the fact this incident was recorded by the truck's dashboard camera is not persuasive. Although Plaintiffs may have determined these witnesses are not necessary to prosecute their case, it is not for Plaintiffs to determine who the defense witnesses will be. Penske must be afforded the opportunity to make its own judgment as to what probative value these sixty-five witnesses' testimony may have for their defense. Here, Penske produced evidence of record to support its theory of the case and its defenses, including comparative negligence. While this Court takes no position on whether Penske's strategy will be successful, a review of the pleadings, the Motion to Dismiss, and the exhibits appended to the Motion to Dismiss suggest to this Court that Penske's strategy and arguments are not frivolous.

In addressing the public interest factors, the Pennsylvania appellate courts recognize:

> administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community that has no relation to the litigation. There is an appropriateness, too, in having the trial in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle the problems in conflict of laws, and in law foreign to itself.

Jessop, 859 A.2d at 803-804.

The public factors also favor dismissal. At the outset, Pennsylvania has an interest in regulating Penske's conduct because Penske is a Pennsylvania corporation. Contrary to

17

Plaintiffs' argument, the fact Penske is a Pennsylvania corporation does not *ipso facto* require the denial of Penkse's Motion to Dismiss.

Unquestionably, Pennsylvania has an interest in how Herr and Stoicheff formulate policies at Penske's Berks County headquarters because these policies have an impact statewide and nationwide. However, Plaintiffs' negligence claim is not based solely on the promulgation of certain policies. Plaintiffs argue Penske's negligence stems from both their enactment of deficient policies and their failure to properly implement existing policies. E.g. Amended Complaint at ¶ 32 ("Defendant [Penske] was responsible for implementing and enforcing relevant company policies . . ."). Pennsylvania has considerably less interest, compared to Texas' interest, in how Penske's Texas employees enforced existing company policies in Texas.

Next, the burden of jury duty should not be imposed on Philadelphia citizens when Philadelphia's relationship with this litigation is tenuous. The parties have not identified any Philadelphia-based Penske employees as witnesses in this case. Philadelphia County's only connection to this case is that Penske conducts business in Philadelphia. Penske's corporate headquarters sit in the shadow of the Berks County Courthouse, not Philadelphia City Hall. The decision-makers who work at Penske's corporate headquarters do not live and work in Philadelphia; they live and work in Berks County. Philadelphia County's interest in, and relationship to, this litigation is the same as that of Allegheny County, Potter County, York County, or any other county in this Commonwealth where Penske operates but is not headquartered; yet, the citizens of Philadelphia alone bear the burden of jury duty in this case.

Pennsylvania's interest in regulating the conduct of a Pennsylvania corporate citizen is therefore tempered by the burden of imposing jury duty upon the citizens of Philadelphia based solely on the fact Penske does business in Philadelphia. See Engstrom, 855 A.2d at 57 (holding

18

the Philadelphia Court of Common Pleas did not abuse its discretion when determining the citizens of Philadelphia should not be burdened with jury duty involving products liability cases against a Pittsburgh-based corporation when Philadelphia's only relationship with the cases was the Pittsburgh-based corporation's products were sold nationally, including in Philadelphia).

The issues concerning court congestion and the COVID-19 pandemic are, at best, equivocal. Penske argued the Philadelphia Court of Common Pleas is congested due to cancellations related to the COVID-19 pandemic. This is simply not the case. The Court's electronic filing system operated continuously throughout the COVID-19 Pandemic, see President Judge Administrative Order 29 of 2020 (Philadelphia Court of Common Pleas, April 8, 2020), and the Philadelphia Court of Common Pleas Civil Trial Division has been deciding non-emergency motions since April of 2020. Cf. Administrative Governing Board Order No. 31 of 2020 (Philadelphia Court of Common Pleas, April 22, 2020) (permitting alternate methods of signing of orders by judges). The Philadelphia Court of Common Pleas resumed civil jury trial in March of 2021 and each month tries more cases than the preceding month. As it relates to safety issues concerning COVID-19, this Court is confident neither the Philadelphia County Court of Common Pleas nor the Texas courts would take any action to endanger the health or safety of the litigants, witnesses, jurors, or court staff.

With respect to any choice of law issues, this Court has the utmost confidence in its ability to apply Texas law, if necessary. Notwithstanding this Court's confidence, as the briefing in this case shows, this is a complex case involving complicated issues of negligence, comparative negligence, and causation. The possibility exists resolution of this case will rest on the interpretation and application of Texas law. In a case as complex as this one, it would be prudent to have a Texas court address any novel issues arising under Texas law, and have Texas'

19

appellate courts reviewing those applications of Texas law. See e.g. Plum, 160 A.2d at 553 ("There is an appropriateness, too, in having the trial . . . in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflicts of laws and in law foreign to itself") (citation and quotation omitted); Jessop, 859 A.2d at 803-04; Engstrom, 845 A.2d at 56.

In sum, although it has an interest in regulating the conduct of Pennsylvania's corporate citizens, the Philadelphia court system should not be burdened with a case in which Philadelphia, and Philadelphians, played no role.

Contrary to Plaintiffs' argument, the McConnell and Vaughan cases do not mandate the denial of Penske's Motion to Dismiss. In McConnell, the plaintiff, then a resident of Michigan, was implanted with a medical device in 2003; twelve years later, while residing in Texas, the plaintiff learned her medical device penetrated the wall of her inferior vena cava, thereby requiring ongoing medical care and monitoring. McConnell, 221 A.3d at 224-25. The McConnell plaintiff sued three defendants, one located in France, one located in the state of Delaware, and one headquartered in Lehigh County, Pennsylvania. Id. at 225. According to the pleadings, the French defendant designed and manufactured the medical device and the Lehigh County defendant had exclusive rights to distribute the device in the United States; the Lehigh County defendant transferred the rights to distribute the device to the Delaware defendant in 2007. Id. The defendants, citing the doctrine of *forum non conveniens*, filed a motion seeking to dismiss the action to be refiled in Texas or, in the alternative, for the action to be transferred to Lehigh County. The trial court granted the motion and dismissed the action to be refiled in Texas. The Superior Court reversed.

20

With respect to the private factors, the Superior Court held the trial court abused its discretion when it accepted the defendants' argument the plaintiff's medical providers would be critical to establish liability and damages despite the fact the defendants did not specifically identify any such witnesses or illustrate the import of these unidentified witnesses' testimony. McConnell, 221 A.3d at 229. Next, the McConnell Court faulted the trial court for not considering the affidavits submitted by employees of the Lehigh County defendants which showed these employees had relevant knowledge by virtue of the fact they were engaged in the sale, distribution, and marketing of the medical device. Id. at 229-30. The trial court further erred when it concluded Texas would provide easier access to the sources of proof when the record showed the evidence necessary to establish the defendants' defenses was located in France. Id. at 230. Finally, the Superior Court faulted the trial court for "disregard[ing] Pennsylvania's interests and improperly focus[ing] on whether *Philadelphia* was a convenient forum." Id. at 231 (emphasis in original).

In Vaughan, the decedent, a resident of North Carolina, passed away after contracting an infection from a contaminated duodenoscope. Vaughan, 208 A.3d at 69. The plaintiff filed suit against three defendants; two of the defendants had their principal place of business in Center Valley, Lehigh County, and the third defendant was a Japanese corporation headquartered in Tokyo. Id. at 69-70. The defendants filed a motion to dismiss the case under § 5322, arguing North Carolina provided a more appropriate forum. Id. at 75. The trial court granted the defendants' motion, and the Superior Court reversed. Id. at 75-78.

The Vaughan Court held the trial court abused its discretion for three reasons. First, the trial court erred in determining the relevant evidence was located in North Carolina and Japan, not Pennsylvania. Vaughan, 208 A.3d at 76-77. The Superior Court held "a plaintiff may

21

establish a close connection with a forum based upon 'relevant corporate actions' that take place there." Id. at 76. In Vaughan, the corporate contacts with Pennsylvania included the corporate headquarters in Lehigh County and the plaintiff's identification of 64 employees stationed at corporate headquarters who may be able to provide relevant evidence. Id. at 77. Second, the Superior Court found trial court improperly considered the convenience of the plaintiff's witnesses. Id. Finally, the Superior Court held the trial court erred by ignoring Pennsylvania's interest in the case, despite the presence of Pennsylvania-based defendants. Id.

The McConnell and Vaughn decisions are distinguishable from the case *sub judice*. Unlike the defendants in McConnell who did not identify any Texas-based witnesses with specificity, Penske identified sixty-five third-party witnesses who may be relevant to their defenses, and summarized the relevance of these witnesses' testimony. E.g. Motion to Dismiss at ¶¶ 44, 46, 50-51, 56, 147, Ex. 10, Ex. 11. Additionally, as set forth above, this Court considered Plaintiffs' arguments as it relates to the importance of the testimony of Penske executives Stoicheff, Herr, and Horack; however, after reviewing the record as a whole, this Court determined these witnesses represented a narrow sliver of the witnesses expected to be called at trial and could all be compelled to appear if this case was tried in Texas, while none of the sixty-five third-party witnesses identified by Penske could be compelled to appear in a Pennsylvania court. In McConnell and Vaughan, the Superior Court emphasized the defendants would need to rely on Pennsylvania witnesses to establish their defenses; whereas, in this case, the evidence to support each of Penske's three identified defenses is located in only one location – Texas. Finally, unlike the trial courts in McConnell and Vaughan, this Court explicitly considered Pennsylvania's interest in regulating the conduct of its corporate citizens and weighed that interest against the burden of imposing jury duty on the citizens of Philadelphia in a case in

22

which Philadelphia, and Philadelphians, play no role. For all of these reasons, the Superior Court's holding in McConnell and Vaughan are inapplicable to the case *sub judice*.

To the extent Plaintiffs' Statement of Errors suggests that this Court erred by "ordering that this suit must be refiled in Texas within 90 days from the date of its dismissal in order for the 'the filing date to be used for statute of limitation in the re-filed action shall be July 8, 2019,' because that aspect of [this Court's] order in effect requires the re-filing of this suit in Texas before plaintiffs can obtain the appellate review of [the July 14, 2021 Order]," Plaintiffs' Statement at ¶ 7, Plaintiffs argument is misplaced. This Court dismissed Plaintiffs case without prejudice and the July 14th Order incorporated Penske's stipulation to not raise the statute of limitation if this matter was timely refiled in Texas. See Plum, 160 A.2d at 551 (courts cannot dismiss an action under § 5322(e) if the statute of limitation has run "unless the court is willing to accept defendant's stipulation that he will not raise this defense in the second state"). If they are concerned Penske's stipulation concerning the statute of limitations would prevent appellate review of this Court's July 14th Order or would require them to litigate this case in Texas while appellate review is occurring in Pennsylvania, the applicable Rules permit Plaintiffs to seek supersedeas from this Court or from the appropriate appellate court. Plaintiffs have made no such application.

Finally, although it did not play a decisive role in the resolution of this matter, this Court remains mindful of Plaintiffs' blatant forum shopping. This is the third iteration of this matter. First, Plaintiffs filed suit in Texas and named Antoine as a defendant. Plaintiffs then dismissed the Texas action and filed the February action against only Penske. After Penske removed the February action to federal court, Plaintiffs dismissed the February action, and filed this action. In this action, Plaintiffs' Amended Complaint explicitly stated Defendant Antoine was joined for

23

the purpose of defeating federal jurisdiction. Amended Complaint at ¶ 7. Plaintiffs then failed to effectuate proper service on Defendant Antoine. The inclusion of Defendant Antoine in this case is nothing more than gamesmanship and improper forum shopping. If the inclusion of Antoine as a defendant was due to Plaintiffs' preference for the case to be tried in state court rather than in federal court, Plaintiffs would have filed this case in Berks County, not Philadelphia County. Motions to dismiss, such as the one filed by Penske, are the procedural counterbalance to such forum shopping and provide this Court with a mechanism to ensure the procedural rules are not abused to advantage of one party. Wright, 215 A.3d at 991 ("The doctrine of *forum non conveniens* provides the court with a means of looking beyond technical considerations such as jurisdiction and venue to determine whether litigation in the plaintiff's chosen forum would serve the interests of justice under the particular circumstances ... The doctrine addresses the issue of plaintiffs bringing suit in an inconvenient forum in the hope that they will secure easier or larger recoveries or so add to the costs of the defense that the defendant will take a default judgment or compromise for a larger sum").

Since an alternate forum exists and Penske met its burden of producing evidence to show the public and private factors weighed in favor of dismissal, this Court granted Moving Defendants' Motion and dismissed this case.

**WHEREFORE** the above stated reasons, this Court's Order dated July 14, 2021 should be affirmed.

BY THE COURT:

_____
ARNOLD L. NEW, J.

24